UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
BANCROFT OWNERS INC.,

                    Petitioner,                    Case No.: 20-cv-4914

    -against-

NEW YORK HOTEL AND MOTEL TRADES
COUNCIL, AFL-CIO,

                    Respondent.
------------------------------------------------------------------X

## PETITIONER'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS ORDER TO SHOW CAUSE

**MILMAN LABUDA LAW GROUP PLLC**

Joseph M. Labuda, Esq.
3000 Marcus Avenue, Suite 3W8
Lake Success, New York 11042
(516) 328-8899 (office)
(516) 328-0082 (facsimile)

*Attorneys for Petitioner*

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ................................................................................................ 1

**STATEMENT OF FACTS** ........................................................................................................ 1

**LEGAL STANDARD** ............................................................................................................... 3

**ARGUMENT** ............................................................................................................................. 4

    I.      Petitioner Will Suffer Irreparable Harm if a Preliminary Injunction Is Not Granted ............................................................................................................................. 4

    II.     Petitioner Has a Strong Likelihood of Success on the Merits ..................................... 4

**CONCLUSION** ......................................................................................................................... 8

## PRELIMINARY STATEMENT

Petitioner, Bancroft Owners Inc. ("The Bancroft" or "Petitioner") submits this Memorandum of Law in support of its application, pursuant to Labor Management Relations Act of 1947, 29 U.S.C. § 185 ("LMRA") and Rule 65 of the Federal Rules of Civil Procedure, to stay two arbitrations scheduled for June 29, 2020 and June 1, 2020 by Respondent, New York Hotel and Motel Trades Council, AFL-CIO ("Union" or "Respondent") and for a preliminary injunction to enjoin the arbitrations from proceeding. For the reasons below, The Bancroft's application should be granted in its entirety.

## STATEMENT OF FACTS

**June 29, 2020 Arbitration**

On June 23, 2020, Respondent issued a notice of hearing to Petitioner scheduling an arbitration for June 29, 2020. See Affidavit of Joseph M. Labuda, Esq. dated June 25, 2020 ("Labuda Aff."), Exhibit A.

Respondent seeks to arbitrate Petitioner's alleged "repudiation" of an alleged collective bargaining agreement and bind it to a union contract until 2027. Labuda Aff. ¶ 5. Respondent had not raised the issue of the alleged "repudiation" with Petitioner prior to Respondent's issuance of the notice of hearing. Labuda Aff. ¶ 6.

**July 1, 2020 Arbitration**

On June 19, 2020, Respondent issued another notice of a hearing scheduling an arbitration for July 1, 2020 regarding the discharge of an employee at Petitioner. Labuda Aff. ¶ 7, Exhibit B.

After the issuance of the discharge arbitration notice, Petitioner had discussions with Respondent's counsel regarding the basis for the discharge and Respondent's propriety to

arbitrate. Labuda Aff. ¶ 8. During the course of those discussions, Petitioner questioned whether Respondent had the right to arbitrate the discharge and requested that Respondent provide Petitioner with a signed collective bargaining agreement ("CBA") requiring Petitioner to arbitrate disputes. Labuda Aff. ¶ 9. Petitioner repeatedly asked Respondent's counsel in writing and orally for a copy of a CBA that purportedly obligates Petitioner to arbitrate the discharge. Labuda Aff. ¶ 10. To date, Respondent has not produced any CBA executed by Petitioner. Labuda Aff. ¶ 11.

Instead of producing an executed CBA, Respondent told Petitioner that The Bancroft is obligated to arbitrate because it is a part of a multiemployer bargaining association between Respondent and certain other hotels. Labuda Aff. ¶ 12. Respondent produced two emails, one from 2013 and one from 2015, purportedly from a person named Robert Saltzstein ("Saltzstein") that, in Respondent's view, establishes that Petitioner is bound to a multi-employer bargaining association. Labuda Aff. ¶ 13, Exhibit C. Petitioner does not have any documents to/from Saltzstein or Respondent authorizing Saltzstein to bind Petitioner to either of the two union agreements listed above. Labuda Aff. ¶ 14.

Upon seeing the emails, Petitioner emailed Saltzstein in order to confirm or deny Respondent's claim. Labuda Aff. ¶ 15, Exhibit D. Petitioner never received a response. Labuda Aff. ¶ 15. After not receiving any response from Saltzstein, Petitioner asked Respondent for Saltzstein's contact information. Respondent told Petitioner that they believed Saltzstein had passed away. Labuda Aff. ¶ 16.

Saltzstein did not have the authority to bind Petitioner to an unsigned CBA. Labuda Aff. ¶ 17. In the Second Circuit, apparent authority is established by the representation of such authority by the principal to the third party. Petitioner did not inform Respondent that Saltzstein

2

ever had the authority to bind Petitioner to the two (2) union contracts that Respondent claims Petitioner is bound to. Labuda Aff. ¶ 18.

Respondent has not produced any evidence from Petitioner of apparent authority. Consequently, as set forth below, Petitioner is not obligated to arbitrate either the "repudiation" issue or the discharge issue. Labuda Aff. ¶ 19.

It should be noted that Petitioner has always maintained the practice of paying wages to its employees and the benefits contributions to Respondent's fringe benefits funds on behalf of the employees for health care and retirement purposes in order to provide a competitive compensation package for its employees. However, Petitioner has not agreed to be bound by any union CBA nor has it agreed to arbitrate disputes with Respondent. Labuda Aff. ¶ 20. As set forth below, the wage and benefits contributions payments do not bind Petitioner to any CBA for the purposes of arbitrating disputes.

## LEGAL STANDARD

To obtain a preliminary injunction, the movant must show (1) irreparable harm if the injunction is not granted and (2) likelihood of success on the merits of its case. See Reuters Ltd. v. United Press Int'l, Inc., 903 F.2d 904, 907 (2d Cir. 1990). A temporary restraining order may be granted pending a hearing for a preliminary injunction where "it clearly appears from facts shown by affidavit or by verified complaint that immediate and irreparable injury, loss or damage will result to the applicant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b).

**ARGUMENT**

I.    **Petitioner Will Suffer Irreparable Harm if a Preliminary Injunction Is Not Granted**

"Irreparable injury means injury for which a monetary award cannot be adequate compensation." Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir. 1979). A party suffers "per se irreparable harm" where that party is compelled to arbitrate a matter despite it not being a party to an agreement requiring it to arbitrate said matter. Tellium, Inc. v. Corning Inc., No. 03 Civ. 8487 (NRB), 2004 U.S. Dist. LEXIS 2289, at *8 (S.D.N.Y. Jan. 15, 2004).

Here, Petitioner is not a party to an agreement requiring it to arbitrate any disputes with Respondent. Without intervention by this Court, Petitioner will be required to suffer the irreparable harm of having to arbitrate matters over which the arbitrator has no jurisdiction. Any awards issued by the arbitrator could subject Petitioner to potential liability, even though such liability does not exist under any agreement and could give Respondent cause to believe that all obligations under the CBA that Petitioner did not execute are enforceable.

II.    **Petitioner Has a Strong Likelihood of Success on the Merits**

To establish a likelihood of success on the merits, the movant "need not show that success is an absolute certainty. He need only make a showing that the probability of his prevailing is better than fifty percent. There may remain considerable room for doubt." Abdul Wali v. Coughlin, 754 F.2d 1015, 1025 (2d Cir. 1985). As detailed below, Petitioner has demonstrated likelihood of success on the merits.

    A.    **The Court Must Decide Whether a Dispute Is Arbitrable**

As an initial matter, the issue of whether Petitioner is bound to any CBA with Respondent must be decided by the court—not an arbitrator. Under 9 U.S.C. § 4, a party may

4

challenge whether it is subject to an arbitration agreement and seek a stay of the arbitration in Court.  See 9 U.S.C. § 4; Litton Fin. Printing Div. v. NLRB, 501 U.S. 190, 208 (1991) ("Whether or not a company is bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the court, and a party cannot be forced to 'arbitrate the arbitrability question.'"); Abram Landau Real Estate v. Bevona, 123 F.3d 69, 73 (2d Cir. 1997) ("When parties disagree about whether they ever entered into an arbitration agreement, a court decides that issue . . . .").  Here, since Petitioner did not execute a CBA with Respondent, the threshold question of arbitrability must be decided by the court.

> **B.    The Arbitrations Must Be Stayed Because Petitioner Is Not a Party to Any Contract with Respondent**

It is settled that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  AT&T Techs. v. Communs. Workers of Am., 475 U.S. 643, 648 (1986); see Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc., 252 F.3d 218, 224 (2d Cir. 2001) ("[T]he obligation to arbitrate remains a creature of contract.").  Indeed, "only signatories to an arbitration agreement are bound by its terms." ABM Indus. Grp., LLC v. Int'l Union of Operating Eng'rs, No. 1:18-cv-10770-GHW, 2019 U.S. Dist. LEXIS 130311, at *6 (S.D.N.Y. Aug. 2, 2019); see Local Union No. 38 Sheet Metal Workers' Int'l Ass'n v. Custom Air Sys., Inc., 357 F.3d 266, 268 (2d Cir. 2004) ("Ordinarily, binding a non-signatory to a CBA runs afoul of the fundamental premise that 'a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit.'").

Here, Petitioner has no obligation to arbitrate because despite repeated demand by Petitioner, Respondent has not produced an executed CBA with the Union.  Accordingly, Petitioner is not bound to any CBA with Respondent.  See Tile Setters & Tile Finishers Union,

5

Local Union No. 7 v. Speedwell Design/BFK Enter., LLC, No. 06-cv-5211 (KAM), 2009 U.S. Dist. LEXIS 27270, at *29-30 (E.D.N.Y. Mar. 31, 2009) (holding that association CBA did not bind employer in a collective bargaining relationship with union because employer was never a member of the Associations that negotiated the 2003 Association CBA with union, had no notice of those negotiations and did not participate in them, and never signed or received a copy of the 2003 Association CBA until union sued to compel arbitration under the 2003 Association CBA in September 2006).

While there are limited exceptions to the rule that there must be an executed CBA in order to obligate an employer to arbitrate, the exceptions are inapplicable here. The limited exceptions are: (1) incorporation by reference; (2) assumption; (3) agency; (4) veil piercing/alter ego; and (5) estoppel. ABM Indus., 2019 U.S. Dist. LEXIS 130311, at *6-7. First, there was no incorporation by reference because there is no separate written agreement between the parties that incorporates an arbitration provision. Id. at *8 n.1. Second, there was no assumption because Petitioner's conduct "did not manifest an agreement to arbitrate." Id. at *10. Indeed, counsel for Petitioner never told Respondent's counsel that Petitioner agreed to arbitrate, and counsel for Petitioner repeatedly asked Respondent to provide a copy of the signed CBA that obligates Bancroft to arbitrate. Labuda Aff. ¶¶ 10, 20. Third, the law of agency cannot bind Petitioner to the unsigned CBA because no person with apparent authority acted on behalf of Petitioner. Apparent authority is only established by "representations of the principal to the third party" and an agent cannot create apparent authority "by his own actions or representations," so the purported emails from Robert Saltzstein are insufficient as a matter of law. Fennell v. TLB Kent Co., 865 F.2d 498, 502 (2d Cir. 1989). Fourth, the veil piercing/alter ego theory is inapplicable because there is no parent-subsidiary relationship involved here. Finally, estoppel

does not apply "where the signatory to an arbitration clause seeks to enforce it against a non-signatory" because Petitioner did not "take advantage of the CBA's arbitration clause to derive any sort of benefit." ABM Indus., 2019 U.S. Dist. LEXIS 130311, at *8 n.1.

Furthermore, even though Petitioner paid wages to their employees and made contributions to the Union's benefit funds, this alone does not bind Petitioner to any CBA. AGL Indus. v. Iron Workers Local 40, No. 14-CV-03618 (FB) (RLM), 2014 U.S. Dist. LEXIS 176833, at *3-4 (E.D.N.Y. Dec. 22, 2014) (holding that employer's payment of benefit contributions to union, in light of employer's other conduct, "is insufficient to establish an intent to be bound by Respondents' CBA"); Panek v. Cimato Bros. Constr., Inc., No. 02-CV-333, 2007 U.S. Dist. LEXIS 76359, at *11-12 (W.D.N.Y. Oct. 15, 2007) (holding that employer was not bound to unsigned CBA; even though employer "voluntarily submitted contribution payments" to union, "the remainder of its conduct was inconsistent with the CBAs").

Thus, Petitioner is likely to succeed in the merits of its claim, so the Court should grant Petitioner's motion to stay the arbitrations and for an injunction. See Marchetti's Beromun Aktiengesellschaft v. Societa Industriale Agricola, 471 F. Supp. 1163, 1172 (S.D.N.Y. 1979) (denying application for order directing arbitration where "there was no valid agreement to arbitrate"); Nat'l Marine Engineers' Ben. Ass'n v. Globe Seaways, Inc., 451 F.2d 1159, 1163 (2d Cir. 1971) (affirming denial of motion to confirm arbitration awards where there was no valid contract to arbitrate).

Petitioner has made the requisite showing of a likelihood of success on the merits. This showing, in conjunction with the per se irreparable harm that will result, entitles Petitioner to preliminary injunctive relief and a stay of the arbitrations.

## **CONCLUSION**

For the foregoing reasons, Petitioner respectfully requests that the Court grant the instant application in its entirety.

Dated: Lake Success, New York
June 25, 2020

**MILMAN LABUDA LAW GROUP PLLC**

/s/ Joseph M. Labuda, Esq.
Joseph M. Labuda, Esq.
3000 Marcus Avenue, Suite 3W8
Lake Success, New York 11042
(516) 328-8899 (office)
(516) 328-0082 (facsimile)

*Attorneys for Petitioner*

8