UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In the Matter of the Application of

BANCROFT OWNERS, INC.,

                        Petitioner,

       -against-

NEW YORK HOTEL & MOTEL TRADES
COUNCIL, AFL-CIO,

                     Respondent.

Civil Action No.  1:20-cv-04914 (AKH)

## UNION MEMORANDUM OF LAW IN OPPOSITION TO PETITONER'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION TO STAY ARBITRATIONS

PITTA LLP
Joseph Farelli
(jfarelli@pittalaw.com)
120 Broadway, 28th Floor
New York, NY  10271
Telephone:  212-652-3890
Facsimile:  212-652-3891

{00674835-1}

i

## PRELIMINARY STATEMENT

Respondent New York Hotel and Motel Trades Council, AFL-CIO ("Union" or "Respondent"), by its attorneys, Pitta LLP, submits this Memorandum of Law, along with supporting affidavits and affirmations, in opposition to the Order to Show Cause brought by Bancroft Owners, Inc. d/b/a Bancroft Condo d/b/a Bancroft Hotel ("Hotel" or "Petitioner") seeking a temporary restraining order ("TRO") and preliminary injunction staying arbitrations scheduled for June 29, and July 1, 2020 ("Action").

The Hotel's application for a TRO and a preliminary injunction to stay the June 29, and July 1, 2020 arbitrations brought by the Union (collectively "Arbitrations") is based upon its frivolous assertion, made at the proverbial last hour, that the Hotel is not bound to a collective bargaining agreement under which it has lived and complied with over the course of the last seven (7) years. The Hotel has not and cannot meet the standard for issuance of the requested injunctive relief as it has not submitted any evidence of actual imminent and irreparable harm; has no likelihood of success on the merits of its application; the balance of equities tilts against it; and the public interest would be harmed.

First, the Hotel abjectly fails to meet the high threshold standard for irreparable harm reiterated by a district court in this Circuit in International Brotherhood of Electrical Workers, AFL-CIO, Local Union No. 3 v. Charter Communications, Inc., 277 F. Supp. 3d 356 (E.D.N.Y. 2017). As emphasized by District Court Judge Jack Weinstein, irreparable harm is the *sine qua non* for equitable relief and if there is no actual irreparable injury, then there is no preliminary injunction. See id. at 365. Here, there is no irreparable harm whatsoever from having to participate in an arbitration proceeding the Hotel can subsequently challenge. Second, the Hotel cannot demonstrate any likelihood of success on the merits. Instead the evidence is overwhelming that the Hotel has adopted and assumed the Division A collective bargaining agreement ("CBA") by

participating without objection in multi-employer bargaining and subsequently honoring all of the terms of the CBA (including making contributions to the multi-employer Taft-Hartley funds enumerated under the CBA at the rates set forth therein) for seven (7) years, and even settling disputes arising under the contract with agreements that incorporate its grievance and arbitration provisions.. Therefore, the Hotel is not likely to succeed in convincing the Court that it is not bound to the CBA and the agreement to arbitrate set forth therein.

The Hotel's application to stay the Arbitrations also fails the equities in light of the irrefutable fact the Hotel contractually agreed to submit to the arbitrator all challenges to arbitrability and the jurisdiction of the contract arbitrator. Equity cannot countenance a party's complete abdication of basic responsibility. The fact that the Hotel then attempted to sneak in this Action at the very last moment only aggravates further the Hotel's unclean hands.  Finally, inasmuch as public policy long favors labor arbitration as the fast and final means for resolving labor disputes, the Hotel's Action lacks any basis at all.

Based upon the foregoing, the Court should deny the Hotel's application for a TRO and preliminary injunction to stay the Arbitrations and dismiss the Hotel's June 26, 2020 petition to stay the same ("Petition"), in its entirely, and award the Union its attorneys' fees.

## FACTS

Hotel Bound to the Division A Collective Bargaining Agreement

Since 1998, if not decades earlier, Associated Hotels and Motels of Greater New York ("Associated Hotels") has existed for the sole purpose of representing smaller scale hotels and residential buildings that were former hotels in multi-employer bargaining for an industry-wide collective bargaining agreement. (Farelli Aff. ¶8).[1] In 2007, Robert Saltzstein of the Associated

---

[1]       References to a specific paragraph of the Affirmation of Joseph Farelli is noted as "(Farelli Aff. ¶ )".

2

Hotels provided the Hotel, Restaurant, Club Employees and Bartenders Union, Local 6 ("Union"), an affiliate of the Union, with a list of employers from who it had received bargaining assents to represent then in multi-employer bargaining, including the Hotel, along with a copy of the Hotel's assent. (Farelli Aff. ¶9, Exhibits A and B). The Union and two bargaining groups, the Association and the Associated Hotels, engaged in multi-employer bargaining, with such bargaining resulting in the parties concluding an industry-wide collective bargaining covering the employer members of the Association and Associated Hotels, commonly known as the Division A collective bargaining agreement ("Division A CBA"). The Division A CBA was signed by the Union, Association and the Associated Hotels representatives and not any of the individual employers represented in the multi-employer bargaining. (Farelli Aff. ¶10, Exhibit C).

In 2013, the Association and the Associated Hotels engaged the Union in multi-employer bargaining to extend and modify the Division A CBA. Prior to such round of bargaining, Saltzstein of the Associated Hotels provided the Union with a list of employers who the Associated Hotels would represent in multi-employer bargaining with the Union, including the Hotel. Further, prior to such bargaining, the Union had not received any notice from the Hotel that it was revoking the Associated Hotels' bargaining authority or that it was withdrawing from multi-employer bargaining. (Farelli Aff. ¶11, Exhibit D). The 2013 bargaining between the Association, Associated Hotels and the Union resulted in an agreement which extended and modified the Division A CBA with a duration from July 1, 2013 through June 30, 2020 ("2013 agreement"). The 2013 agreement modified the terms of the Division A CBA, *inter alia*, by providing for seven (7) annual wage increases; a new two (2) year step-up period during which newly hired employees were paid 85% of the Division A CBA minimum wage rates in the employees' third and fourth years; an increase in the contribution rates to all of the multi-employer Taft-Hartley employee benefit funds (collectively "Funds") set forth in the Division A CBA, including the newly added

3

Pre-paid Legal Fund ("Legal Fund") and Industry-wide Training Program ("ITP"); and that the Hotel was required to file monthly electronic reports with the Union. (Farelli Aff. ¶12). The modified Division A CBA was signed by representatives from the Union, Association and the Associated Hotels, and not any individual employers who were members of the Association or the Associated Hotels. (Farelli Aff. ¶13, Exhibit E). The Hotel implemented the terms of the 2013 agreement. (Farelli Aff. ¶14).

In 2015, the Association and the Associated Hotels, again, engaged the Union in multi-employer bargaining for an agreement to modify and extend the Division A CBA through June 30, 2027. (Farelli Aff. ¶15). Prior to bargaining, Saltzstein of the Associated Hotels provided the Union with a list of employers who the Associated Hotels would represent in multi-employer bargaining with the Union, including the Hotel. Saltzstein also noted in his communication with the Union that no Associated Hotels employer member had sent a notice of withdrawal from multi-employer bargaining. The Union had also not received any notice from the Hotel that it was withdrawing from the Associated Hotels and its multi-employer bargaining. (Farelli Aff. ¶16, Exhibit F). The 2015 bargaining between the Association, Associated Hotels and the Union resulted in an agreement which modified and extended the Division A CBA through June 30, 2027 ("2015 agreement"). The 2015 agreement modified the terms of the then Division A CBA, *inter alia*, by reallocating one-half of the monthly contribution payable to the Legal Fund to the Health Benefits Fund and significantly increasing the contribution rates to the Health Benefits Fund, effective January 1, 2015. (Farelli Aff. ¶17, Exhibit G). The Hotel implemented the terms of the 2015 agreement. (Farelli Aff. ¶18).

Since 2013, the Hotel has complied with the Division A CBA, as modified by the 2013 and 2015 agreements. It has paid the minimum hourly wage scales and each of the seven (7) annual wage increases to date provided for under the Division A CBA. (Bokerman Aff. ¶7)(Farelli Aff.

4

¶¶12, 14).[2] The Hotel also availed itself of the newly added two (2) year step-up period by which it paid newly hired employees at 85% of the Division A CBA minimum wage rates during the employees' third and fourth years of employment. (Farelli Aff. ¶¶12, 14). During the same period, the Hotel has filed monthly remittance reports and remitted monthly benefit contributions to all of the multi-employer Taft-Hartley employee benefit funds (collectively "Funds"), including the Health Fund, at the rates set forth in the Division A CBA in 2013, later modified by the 2015 Agreement. (Bokerman Aff. ¶9)(Farelli Aff. ¶¶12, 14, 17)(Veras Aff ¶¶ 3-4).[3] The Hotel, in its Petition to the Court, conceded this payment of contractual wages to employees and benefit contributions to the Funds on their behalf. (Petition ¶21).[4] The Hotel has also checked-off dues from bargaining unit employees and forwarded the same to the Union, along with monthly electronic reports, as required under the Division A CBA. (Bokerman Aff. ¶¶6, 8) (Farelli Aff. ¶¶12, 14). Moreover, in 2017, current counsel to the Hotel acknowledged in an e-mail that the Hotel was bound to the Division A CBA and requested to re-negotiate regarding the hiring procedures outlined in the Division A CBA. Also copied on the 2017 e-mail was Joseph Labuda, Esq. ("Labuda") who submitted to the Court a sworn affidavit in support of the Hotel's argument that it was not bound to the Division A CBA. (Bokerman Aff. ¶12, Exhibit H). The Hotel has also consistently acted as bound by the Division A CBA by engaging the Union in its normal course of enforcing the terms of the same, including discussions regarding discipline; untimely payment of annual wage increases; and the contractually mandated hiring procedures. (Bokerman Aff. ¶13, Exhibits I-K).

---

[2]  References to a specific paragraph of the Affirmation of Amy Bokerman is noted as "(Bokerman Aff. ¶)"
[3]  References to a specific paragraph of the Affidavit of Harry Veras is noted as "(Veras Aff. ¶)"
[4]  Reference to the specific paragraph in the Hotel's Petition to Stay the Arbitrations is noted as "(Petition ¶)."

Agreement to Arbitrate

Article VIII of the Division A CBA contains an extremely broad arbitration clause that provides, in part:

> a)      Grievances arising between the parties hereto involving questions or interpretation or application of any clause of this Agreement, or any acts, conduct or relations between the parties, directly or indirectly, which shall not have been adjusted by and between the parties involved shall be referred to a permanent umpire(s) to be known as the Impartial Chairman, and his/her decision shall be final and binding upon the parties hereto. Any questions regarding arbitrability, substantive, procedural, or otherwise, or regarding the Impartial Chairperson's jurisdiction or authority, shall be submitted to the Impartial Chairperson in accordance with this Article.
>
> …
>
> d)      The parties consent that any papers, notices or process, including subpoenas, necessary or appropriate to initiate or continue an arbitration hereunder or to enforce or to enforce or confirm an award, may be served, may be served by ordinary mail directed to the last known address of the parties or their attorneys, or when authorized by the Impartial Chairperson, by telegram, fax, e-mail or telephone… [emphasis added](Bokerman Aff. ¶3, Exhibit A).

The Hotel is acutely familiar with the grievance and arbitration provisions of the Division A CBA as it has resolved multiple grievances under the same. In 2014, the Hotel appeared before the same CBA designated arbitral forum it now seeks to avoid, the Office of the Impartial Chairperson ("OIC" or Impartial Chairperson"), and executed a Voluntary Settlement Agreement dated April 9, 2014 ("2014 VSA") approved by Impartial Chairperson Elliott Shriftman. (Bokerman Aff. ¶10, Exhibit F). In 2016, the Hotel entered into another Voluntary Settlement Agreement with the Union ("2016 VSA") under which it resolved a grievance regarding its failure to include night differential as part of overtime pay as required under the Division A CBA. (Bokerman Aff. ¶10, Exhibit G). The 2016 VSA expressly provided:

6

> <u>Any disputes between the parties</u> or regarding this VSA <u>shall be submitted to final
> and binding arbitration before the Office of the Impartial Chairperson in accordance
> with the grievance and arbitration procedure of Division A CBA.</u> [emphasis added]
> (Bokerman Aff. Exhibit G).

<u>Instant Arbitrations</u>

In February 2020, Hotel employee William McNicholas was discharged by the Hotel. Union representative Harry Rygor met with the Hotel, as he had previously done on multiple occasions, to discuss and possibly resolve the issue of McNicholas' discharge. (Farelli Aff. ¶19). As the parties were unable to resolve same, the Union sent the Hotel and the Office of the Impartial Chairperson ("OIC") a demand for arbitration on April 15, 2020. (Farelli Aff. ¶20, Exhibit H). On May 5, 2020 the OIC sent the Hotel and Union a notice of arbitration hearing regarding the matter for May 15, 2020. That same day, Judith M. Caplan, the Senior Vice President of Human Resources for Terra Holdings, LLC, the managing agent for the Hotel, responded to the notice, via e-mail, and advised the OIC that Ms. Fontana would be appearing at the May 15, 2020 arbitration hearing on behalf of the Hotel. (Farelli Aff. ¶21, Exhibits I-J). Thereafter, the Hotel's attorney, Labuda, claimed that the Hotel had not received the hearing notice and then requested an adjournment of the May 15, 2020 hearing. (Farelli Aff. ¶22). Impartial Chairperson Ira Drogin granted the Hotel's request for adjournment over the Union's objection and the OIC offered the parties hearings dates of June 5, 10, 12, or 15, 2020. After failing to hear from the Hotel, Impartial Chairperson set down July 1, 2020 for a hearing date and the OIC sent the parties notice of the same on June 19, 2020. (Farelli Aff. ¶23, Exhibit K)

In response to Hotel counsel's inquiry as to a signed collective bargaining agreement, Union counsel sent him a copy of the Division A CBA and 2015 agreement, along with copies of the 2013 and 2015 Saltzstein e-mails evidencing the Hotel's participation in multi-employer bargaining by Associated Hotels for the Division A CBA. (Farelli Aff. ¶24, Exhibit L). In light of

7

Hotel's counsel's assertions that the Hotel might not be bound by the Division A CBA past June 30, 2020, the Union demanded an emergency arbitration, which was scheduled for June 29, 2020, regarding the Hotel's repudiation of the Division A CBA, which now runs through June 30, 2027. (Farelli Aff. ¶26, Exhibits M-N).

## ARGUMENT

## I.

## HOTEL HAS FAILED TO SATISFY THE STANDARD FOR ISSUANCE OF A TRO OR PRELIMINARY INJUNCTION

It is well established in this Circuit that the standard for granting a TRO is the same for granting a preliminary injunction. International Brotherhood of Electrical Workers, AFL-CIO, Local Union No. 3 v. Charter Communications, Inc., 277 F.Supp.3d at 363 (citing Andino v. Fischer, 555 F.Supp.2d 418, 419 (S.D.N.Y. 2008); Residents and Families United to Save Our Adult Homes v. Zucker, 2017 WL 3446805, at *1 (E.D.N.Y. Aug. 10, 2017)). A party seeking a preliminary injunction must establish: (1) irreparable harm; (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party; and (3) that a preliminary injunction is in the public interest. Id. (citing New York ex rel. Schneiderman v. Actavis PLC, 787 F.3d 638, 650 (2d Cir. 2015)). "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Id. (quoting Mazurek v. Armstrong, 520 U.S. 968, 972 (1997)). In this case, the Hotel falls woefully short of carrying its burden to establish each and every element necessary for the issuance of a TRO and preliminary injunction to stay the Arbitrations demanded by the Union.

8

## A.

## <u>THE HOTEL PRESENTS NO EVIDENCE OF IRREPABLE HARM</u>

Irreparable harm means: "certain and imminent harm for which a monetary award does not adequately compensate." <u>Id.</u> (quoting <u>Wisdom Import Sales Co., L.L.C. v. Labatt Brewing Co., Ltd.</u>, 339 F.3d 101, 113 (2d Cir. 2003)). Judge Weinstein, in <u>Charter Communications, Inc.</u>, examined and analyzed the requisite proof of irreparable harm for the issuance of a TRO and preliminary injunction. He specifically noted that in the Second Circuit courts "may no longer simply presume irreparable harm; rather, <u>plaintiffs must demonstrate that, on the facts of the case, the failure to issue an injunction would actually cause irreparable harm.</u>" <u>Id.</u> at 364 (quoting <u>WPIX, Inc. v. ivi, Inc.</u>, 691 F.3d 275, 285 (2d Cir. 2012))[emphasis added].

In restating the governing law, Judge Weinstein not only relied upon the 2012 Second Circuit decision in <u>WPIX, Inc.</u>, but upon the Second Circuit's decision in <u>Emery Air Freight Corp. v. Local Union 295</u> in finding no showing of irreparable harm. <u>Id.</u> at 364-65. The Second Circuit in <u>Emery Air Freight Corp.</u>, in denying an employer's application for a preliminary injunction to stay arbitration, held that neither the monetary cost of arbitration nor the possibility of an adverse arbitral decision posed irreparable harm, noting that any arbitration award would need to withstand "judicial scrutiny." 786 F.2d 93, 100-101 (2d Cir. 1986). Judge Weinstein reiterated this mandate in <u>Charter Communications, Inc.</u>, 277 F.Supp.3d at 365 (quoting <u>Sampson v. Murray</u>, 415 U.S. 61, 90 (1974) ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough.")). As succinctly underscored by Judge Weinstein, "The threat of irreparable injury is a sine qua non. If there is no irreparable injury, there can [should] be no preliminary injunction." <u>Id.</u> (quoting <u>American Airlines, Inc. v. Imhof</u>, 620 F.Supp.2d 574, 579 (S.D.N.Y. 2009) (internal quotation marks, citations, and alteration omitted)). Since the union in <u>Charter Communications, Inc.</u> offered no hard evidence of purported harm

9

beyond expenses on an issue it claimed non-arbitrable, Judge Weinstein denied injunctive relief. The same result is warranted here.

The Hotel's reliance on Tellium v. Corning in support of its argument for irreparable harm is misplaced. Judge Weinstein explained in Charter Communications, Inc. that Tellium and similar decisions had been abrogated by the Second Circuit in WPIX. See id. at 364. He noted that decisions like Tellium "collapsed" the irreparable harm inquiry into the likelihood of success prong, despite the two serving as separate, discrete requirements. Id. at 365. Judge Weinstein concluded that: "Under a newer view, courts 'may no longer simply presume irreparable harm; rather, plaintiffs must demonstrate that, on the facts of the case, the failure to issue an injunction would actually cause irreparable harm." Id. at 364.

In this case, there is no evidence of irreparable harm. The Hotel fails to even allege facts of irreparable harm in the Petition or its affidavits in support of its Order to Show Cause for a TRO and preliminary injunction in this case. Instead, the only reference to any alleged irreparable harm is a conclusory statement in its memorandum of law based upon outdated law.

In any event, any belated claim of irreparable harm that the Hotel seeks to aver is belied by its own conduct. The Hotel waited over seven (7) years to claim that it was not bound by a collective bargaining agreement and arbitration clause which it generally complied with during the same period of time.

## B.

### THE HOTEL LACKS ANY LIKELIHOOD OF SUCCESS ON THE MERITS OR SERIOUS QUESTIONS GOING TO THE MERITS OF ITS CLAIMS

The Hotel's only factual argument is that it has not signed a collective bargaining agreement with the Union. Such argument ignores well settled precedent in this Circuit that a non-signatory party may bound to a collective bargaining agreement through agency; assumption;

10

incorporation by reference; and estoppel. <u>ABM Indus. Groups, LLC v. Int'l Union of Operating Engineers, Local 30A, 30B, AFL-CIO</u>, No. 1:18-CV-10770-GHW, 2019 WL 3554504, at *3 (S.D.N.Y. Aug. 5, 2019) (quoting <u>Local Union No. 38, Sheet Metal Workers' Int'l Ass'n, AFL-CIO v. Custom Air Sys., Inc.</u>, 357 F.3d 266, 268 (2d Cir. 2004)).

The Hotel is bound to the Division A CBA under the principles of agency through multi-employer bargaining. "If the 'principal, if not virtually sole activity' of an association is to negotiate collective bargaining agreements on behalf of its members and if the longstanding, universally observed and universally known custom is that members are bound by such agreements, acquiring membership in that organization . . . constitute[s] an unequivocal statement as to its actual authority to bind the new member." <u>Trustees of UIU Health & Welfare Fund v. New York Flame Proofing Co.</u>, 828 F.2d 79, 83 (2d Cir. 1987); <u>Bevona v. Deer Head Chemical Industries, Inc.</u>, No. 90 Civ. 3973(RJW)., 1991 WL 146327 (S.D.N.Y. July 19, 1991). Membership also confers apparent authority on the employer association where an employer subsequently fails to withdraw from multi-employer bargaining prior to negotiations. <u>Id</u>. at 84. With regards to withdrawal, Courts have adopted the NLRB's framework for determining whether an employer effectively withdrew from a multi-employer bargaining arrangement. Courts refuse to permit withdrawal "except upon adequate written notice given prior to the date set by the contract for modification or to the agreed-upon date to begin the multiemployer negotiations." <u>Rd. Sprinkler Fitters Local Union No. 669, AFL-CIO v. Simplex Grinnell LP</u>, 251 F. Supp. 2d 1201, 1203 (W.D.N.Y. 2003) (quoting <u>Retail Associates, Inc.</u>, 120 NLRB 388, 395 (1958)); <u>accord Chartier v. Parkoff</u>, No. 96 CIV. 0541 RWS, 1997 WL 599390, at *3 (S.D.N.Y. Sept. 26, 1997).  The required written notice must be sent to the union.  <u>Sprinkler Fitters</u>, 251 F. Supp. 2d at 1204. Moreover, the notice must be clear and unequivocal.  <u>Trustees of Plumbers Local Union No. 1 Welfare Fund v. Bass Plumbing & Heating Corp.</u>, No. 13-CV-06797 ERK VMS, 2014 WL

11

6886107, at *3 (E.D.N.Y. Dec. 8, 2014). Failure to properly withdrawal from a multiemployer association results in the binding of an employer to subsequently negotiated agreements.  See Rochester Laborers' Welfare-S.U.B. Fund by Brown v. Flower City Monitors, Inc., No. 6:15-CV-06446(MAT), 2017 WL 3033787, at *5 (W.D.N.Y. July 18, 2017).

In this case, the Associated Hotels has existed since at least 1999, if not decades earlier, for the sole purpose of representing smaller scale hotels and residential buildings that were former hotels in multi-employer bargaining with the Union. The Hotel was aware of this when it joined the Associated Hotels in 2007 by executing a bargaining assent to multi-employer bargaining with the Union over the terms of the Division A CBA. Most importantly, the Hotel has not presented any evidence that this actual authority by the Associated Hotels to bargain on behalf of the Hotel was ever withdrawn. Equally telling is that the Hotel offers no evidence that it ever provided the Union any express written notice since 2007 that it was withdrawing from multi-employer bargaining, as required under federal labor law. In fact, Saltzstein specifically noted in his 2015 e-mail to the Union regarding the 2015 round of bargaining that Associated Hotels had not received any withdrawal from multi-employer bargaining from any of the employers listed in his e-mail, including the Hotel. As such, the Union reasonably relied upon Saltzstein's representation that Associated Hotels represented the Hotel in multi-employer bargaining in both the 2013 and 2015 round of negotiations which led to the extension and modification of the Division A CBA.

A non-signatory also assumes a collective bargaining agreement where it manifests an intent to adopt or agree to the CBA. Id. See also Brown v. C. Volante Corp., 194 F.3d 351, 355 (2d Cir. 1999) (submission of remittance reports and payment of union wages served as evidence that the employer intended to adopt relevant CBAs). Indeed, "where an employer is furnished with a successor CBA, and then begins to perform under its terms, it has accepted that contract . . . ."

12

Seabury Const. Corp. v. Dist. Council of New York & Vicinity of United Bhd. of Carpenters & Joiners of Am., 461 F. Supp. 2d 193, 198 (S.D.N.Y. 2006). In this case, unlike in AGL Indus., Inc. v. Iron Workers Local 40, No. 14-CV-03618 FB RLM, 2014 WL 7338925 (E.D.N.Y. Dec. 22, 2014), the case erroneously relied upon by the Hotel, the evidence is overwhelming that the Hotel manifested an intent to be bound to the Division A CBA.

The Hotel has paid the wage scales and annual wage increases under the Division A CBA for seven (7) years, unlike in AGL Indus. where the employer paid wages inconsistent with the asserted binding collective bargaining agreement. Also, here, the Hotel has filed monthly remittance reports and made contributions to the enumerated multi-employer Taft-Hartley funds ("Funds") under the Division A CBA for seven (7) years, whereas in AGL Indus. the employer only filed remittance reports and made contributions to employee benefit funds for just six (6) months. The Hotel not only made contributions to the Funds, including the Health Fund, at the rates set forth in 2013 when the Division A CBA was negotiated, but since 2015, has made contributions to the Funds at the rates modified by the 2015 Agreement which extended the Division A CBA through June 30, 2027. During the same seven (7) year period, the Hotel filed monthly electronic reports with the Union and checked-off dues from bargaining unit employees and forwarded the same to the Union as required under the Division A CBA. In fact, Hotel counsel acknowledged in an e-mail to the Union in 2017 that the Hotel was bound to the Division A CBA when it requested to discuss how the hiring procedures outlined in the Division A CBA could be adjusted for the Hotel. Moreover, Labuda, the affiant in support of the Hotel's application for a TRO and preliminary injunction in this case, was copied on this e-mail. The Hotel has also consistently engaged with the Union in the normal course of contract enforcement of the Division A CBA, including scheduling meetings to discuss discipline with a Union representative, responding to e-mails from the Union regarding the Hotel's failure to timely implement the wage

13

increase as outlined in the Division A CBA, and corresponding with Union representatives regarding the Hotel's hiring obligations as outlined in the Division A CBA. In short, the Hotel's conduct since 2013 has been thoroughly consistent with being bound to the Division A CBA.

Furthermore, the doctrine of assumption also means that "a party may be bound by an arbitration clause if its subsequent conduct indicates that it is assuming the obligation to arbitrate." ABM Indus. Groups, LLC, 2019 WL 3554504, at *3. Again, the undisputed evidence in this case establishes such intent. In 2014, the Hotel appeared before the Division A CBA designated arbitral forum, the OIC, regarding a discharge grievance, much like the grievance scheduled for the July 1, 2020 arbitration, and had Impartial Chairperson Elliott Shriftman sign off on a Voluntary Settlement Agreement ("VSA") resolving the grievance and arbitration. Again, in 2016, the Hotel entered into another VSA with the Union resolving a grievance that arose under the Division A CBA. The 2016 VSA executed by the Hotel expressly provided:

> Any disputes between the parties or regarding this VSA shall be submitted to final and binding arbitration before the Office of the Impartial Chairperson in accordance with the grievance and arbitration procedure of Division A CBA. [emphasis added]

Thus, not only has the Hotel expressly manifested an intent to be bound by the CBA and its arbitration provisions, but it is bound to the arbitration provisions, separately, through "incorporation by reference." Under the theory of incorporation by reference, a party may compel a non-signatory to arbitration where the non-signatory has entered into a separate contractual relationship with the party which incorporates the existing arbitration clause." ABM Indus. Groups, LLC, 2019 WL 3554504, at *3 n.1. The 2016 VSA does just that.

The Hotel also remains bound to the Division A CBA and the arbitration provisions contained therein under the doctrine of estoppel. A "non-signatory may be bound by an arbitration agreement after it has knowingly exploited an agreement containing the arbitration clause for its

direct benefit." <u>ABM Indus. Groups, LLC.</u>, 2019 WL 3554504, at *3 n.1. In this case, the Hotel has reaped the benefits of the Division A CBA for almost seven (7) years. The Hotel has paid its employees' wages and made benefit contributions to the Funds on their behalf as provided under the Division A CBA. The Hotel concedes the benefit of the same when it declared in its petition to the Court that it "has always maintained the practice of paying wages to its employees and the benefits contributions to Respondent's fringe benefits funds on behalf of the employees for health care and retirement purposes in order to provide a competitive compensation package for its employees." Furthermore, the Hotel exploited the benefits of the 2013 agreement's modification to the Division A CBA by paying newly hired employees 85% of the Division A CBA's minimum wage scales in their third and fourth years. The Hotel has also availed itself of the Division A CBA's arbitration machinery. In 2014, the Hotel proceeded to arbitration before the Division A CBA designated arbitration panel, the OIC, regarding a dispute with the Union concerning the discharge of a Hotel employee. The Hotel ultimately resolved the Union's discharge grievance, with the approval of the Impartial Chairperson, by which the employee resigned and the Hotel received a general release from the same thereby likely foreclosing any future litigation with the employee. In 2016, Hotel representative Judith Caplan, the same person who was sent the Union's most recent demands for arbitration and the OIC's hearing notices, signed an agreement with the Union resolving a grievance regarding overtime pay and agreeing "Any disputes between the parties ... shall be submitted to final and binding arbitration before the Office of the Impartial Chairperson in accordance with the grievance and arbitration procedure of Division A CBA." Thus, the Hotel's assertions in the Petition and supporting affidavits that it has not agreed to arbitrate disputes with the Union are bald-faced lies. The Hotel has enjoyed seven (7) years of labor peace and harmony provided by the Division A CBA as opposed to having had to bargain individually with the Union upon expiration of the 2007 Division A CBA and experience any

{00674835-1}

attendant labor strife in connection with the same. Accordingly, the Hotel is estopped from now arguing that it is not bound to the Division A CBA and the agreement to arbitrate set forth therein.

Finally, any argument by the Hotel that the Union's discharge grievance or repudiation claim is not subject to the parties' agreement to arbitrate under the Division A CBA is equally bereft of merit. Article VIII of the Division A CBA contains an extremely broad arbitration clause that provides, in part:

> a)     Grievances arising between the parties hereto involving questions or interpretation or application of any clause of this Agreement, <u>or any acts, conduct or relations between the parties, directly or indirectly,</u> which shall not have been adjusted by and between the parties involved shall be referred to a permanent umpire(s) to be known as the Impartial Chairman, <u>and his/her decision shall be final and binding upon the parties hereto. Any questions regarding arbitrability, substantive, procedural, or otherwise, or regarding the Impartial Chairperson's jurisdiction or authority, shall be submitted to the Impartial Chairperson in accordance with this Article.</u>

The Second Circuit has construed an arbitration provision almost identical to the above to hold: "No grievance – either specific or general – is excluded from this broad coverage." <u>Pitta v. Hotel Ass'n of N.Y.C., Inc.</u>, 806 F.2d 419, 422 (2d Cir. 1986). Such language admits no exclusion of disputes post arbitration. On the contrary, such all-encompassing arbitration language more than affords ample basis to conclude that the parties affirmatively intended to not only arbitrate all grievances arising out of their contractual relationship, but any and all disputes, whether it be directly or indirectly, between them. Accordingly, the presumptions favoring arbitration generally, and federal labor arbitration specifically, coupled with this extremely broad arbitration clause, strongly militate against the District Court's granting the Hotel's requested relief for a prohibition against Arbitrations brought by the Union, including the repudiation claim.

Most importantly, any challenges by the Hotel to the arbitrability of any dispute with the Union must be submitted to the Impartial Chairperson, not the Court, in accordance with the

16

parties' express agreement to do so. This Circuit has repeatedly enforced the parties' ability to provide for the arbitrator to decide the issue of arbitrability itself.  Shaw Grp. Inc. v. Triplefine Int'l Corp., 322 F.3d 115, 124-25 (2d Cir. 2003) (agreement manifested parties' clear and unmistakable intent to submit questions of arbitrability to the arbitrator so "the district court should have deferred to the arbitrator on the parties' dispute about the arbitrability of that claim"); Bell v. Cendant Corp., 293 F.3d 563, 568-70 (2d Cir. 2002) (affirming district court granting of motion to compel arbitration of arbitrability, including claim of waiver); PaineWebber v. Bybyk, 81 F.3d 1193, 1197, 1199 (2d Cir. 1996) (the parties' agreement providing "any and all controversies . . . concerning any . . . dispute or the construction, preference, or breach of this or any other agreement . . . shall be determined by arbitration . . . ."; action to stay arbitration dismissed by endorsed order by Judge Duffy, and affirmed by the Court of Appeals); New York Hotel & Motel Trades Council, AFL-CIO v. Hotel Nikko of New York, Inc., No. 91 CIV. 0755 (DNE), 1991 WL 168284, at *5 (S.D.N.Y. Aug. 22, 1991).

Here, Article VIII of the Division A CBA expressly provides, in part:

Any questions regarding arbitrability, substantive, procedural, or otherwise, or regarding the Impartial Chairperson's jurisdiction or authority, shall be submitted to the Impartial Chairperson in accordance with this Article. [emphasis added]

This clear and unambiguous language required the Hotel to submit any challenge to the arbitrability of the Union's discharge grievance and repudiation claim to the Impartial Chairperson, not to a state or federal court. Simply put, the Hotel has no business being in state or federal court regarding the arbitrability of any disputes with the Union as its sole agreed upon choice of forum is the OIC.

## C.

### THE BALANCE OF THE EQUTIES IN THIS CASE CUTS AGAINST THE HOTEL

"It is a fundamental principle that he who comes into equity must come with clean hands." Stokely-Van Camp, Inc. v. Coca-Cola Co., 646 F. Supp. 2d 510, 532 (S.D.N.Y. 2009) (quoting Hermes Int'l v. Lederer de Paris Fifth Ave., Inc., 219 F.3d 104, 107 (2d Cir. 2000)). "To sustain an unclean hands defense, a defendant must show that the plaintiff has engaged in 'inequitable conduct or bad faith where the misconduct has a material relation to the equitable relief that plaintiff seeks.'" Id. at 533 (quoting Laugh Factory Inc. v. Basciano, 608 F.Supp.2d 549, 560 (S.D.N.Y. 2009)).

In the case at bar, the Hotel has acted in bad faith by claiming now, in 2020, that it was not bound to the Division A CBA and the arbitration agreement contained therein after it has enjoyed the benefits of the same for seven (7) years. Further evidence of its bad faith is its convenient omission from its pleadings that it assented to multi-employer bargaining through the Associated Hotels in 2007 and never sent any notice of withdrawal from the same to the Union since then. Instead, it allowed the Union to rely upon the representations of Saltzstein of Associated Hotels that the Hotel would be bound to the Division A CBA in 2013 and the extension of the same in 2015, as well as the Hotel's conduct over the course of seven (7) years whereby it consistently manifested its intent to be bound to the Division A CBA. Equally egregious is the Hotel's omission from its pleadings the 2016 VSA under which its representative Judith Caplan, the very same representative who was notified of the instant Arbitrations that are the subject of this Action, expressly agreed to submit any disputes with the Union to the arbitration provisions of the Division A CBA. The Hotel's bad faith is further exhibited by its delaying the discharge arbitration initially scheduled for May 15, 2020 to buy itself enough time to file its frivolous petition to stay the arbitration. Hotel counsel requested to adjourn the May 15 arbitration hearing based upon a false

18

claim that the Hotel had not received the hearing notice from the OIC (Caplan responded to such notice) and the Hotel's inability to participate in a hearing during the current COVID-19 pandemic crisis. Nevertheless, Impartial Chairperson Drogin granted the Hotel's adjournment request, over the Union's objections, and attempted to re-schedule the hearing by offering the parties' counsel multiple hearing dates. However, Hotel counsel continued his dilatory tactics by refusing to respond to such offer which resulted in Impartial Chairperson setting the hearing down for July 1, 2020 with the hearing notice sent by the OIC to the Hotel in June 19, 2020. The Hotel then waited a week to file the instant Action, and over two (2) months from the original demand for arbitration, to stay the Arbitrations which were scheduled to be heard within a few business days.

Thus, for all of the above reasons, the Hotel's proven bad faith negates any balancing of the equities in this case in its favor.

**D.**

**THE PUBLIC INTEREST DISFAVORS A STAY OF ARBITRATION**

The Hotel has failed to show that issuance of a stay of the Arbitration in this case serves the public interest. In fact, the issuance of any stay of arbitration based upon the law and evidence in this case would be contrary to the public interest.

The fundamental principles of labor arbitration established in the Supreme Court's celebrated Steelworker Trilogy: United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564 (1960); United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574 (1960); United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593 (1960), have served the nation well by fostering reliance on arbitration, rather than strikes or lockouts, as the preferred method of resolving disputes arising under the terms of a collective bargaining agreement. AT&T Techs., Inc. v. Communications Workers of Am., 475 U.S. 643, 648 (1986); Truck Drivers Local Union No. 807 v. Reg'l Imp. & Exp. Trucking Co., Inc., 944 F.2d

19

1037, 1043 (2d Cir. 1991) (citing Schneider Moving & Storage Co. v. Robbins, 466 U.S. 364, 371-72 (1984). Strong federal policy favors arbitration of labor disputes, with all "doubts . . . resolved in favor" of arbitration, including the threshold issue of arbitrability. See AT&T Techs., 975 U.S. at 647, 650-51; Abraham Landau Real Estate v. Bevona, 123 F3d. 69, 74 (2nd Cir. 1997).

In this case, in light of the CBA's extraordinarily broad arbitration clause and the Union's demands for arbitration which, on their its face, clearly fall within the same, public policy vigorously supports the Court resolving the arbitrability issue in favor of the Union and denying the Hotel's application to stay the arbitration.

## II.

### THE HOTEL'S BAD FAITH WARRANTS AN AWARD OF ATTORNEY'S FEES

While Section 301 does not expressly provide for the recovery of attorneys' fees, courts may award such relief pursuant to their equitable powers when "opposing counsel acts in bad faith, vexatiously, wantonly, or for oppressive reason." New York Hotel & Motel Trades Council v. CF 43 Hotel, LLC, No. 16 CIV. 5997 (RMB), 2017 WL 2984168, at *5 (S.D.N.Y. June 14, 2017); Trustees of the New York City Dist. Council of Carpenters Pension Fund v. Formula 1 Builders, LLC, No. 1:17-CV-1234-GHW, 2017 WL 1483369, at *4 (S.D.N.Y. Apr. 25, 2017). "[A]n award of attorneys' fees . . . further[s] the federal policy in favor of settling labor disputes by arbitration." Formula 1, 2017 WL 1483369 at *5 (citing Local 97, Int'l Bhd. of Elect. Workers v. Niagara Mohawk Power Corp., 196 F.3d 117, 124 (2d Cir. 1999)). Accordingly, courts find attorneys' fees warranted in cases where employers refused to accede to the arbitration process. See Washington Hosp. Ctr. v. Serv. Employees Int'l Union Local 722, AFL-CIO, 746 F.2d 1503 (D.C. Cir. 1984) (finding a hospital's refusal to submit certain grievances to arbitration sufficiently frivolous and unreasonable to warrant a fee award); see also CF 43 Hotel, 2017 WL

20

2984168, at *6 (awarding fees for refusal to comply with arbitration award); In Matter of Arbitration Between P.M.I. Trading Ltd. v. Farstad Oil, Inc., No. 00 CIV. 7120 (RLC), 2001 WL 38282, at *4 (S.D.N.Y. Jan. 16, 2001) (same); Saudi Iron & Steel Co. v. Stemcor USA, Inc., No. 97 CIV. 5976 (DLC), 1997 WL 790746, at *3 (S.D.N.Y. Dec. 23, 1997) (same).

In this case, the Hotel's multiple acts of misconduct cannot be understood except as coming in bad faith, vexatiously, wantonly and for oppressive reasons. The Hotel fails to prove any irreparable harm. The Hotel then ignores longstanding authority that a non-signatory may be bound to a collective bargaining agreement through multi-employer bargaining, as is the case here. It also fails to bring to the Court's attention that it acted consistently over the course of seven (7) years of being bound to the Division A CBA, including an e-mail from Hotel counsel in 2017 essentially acknowledging the same. Most glaring of the Hotel's omissions in its pleadings is the absence of the 2016 VSA under which the Hotel expressly agreed to arbitrate any disputes with the Union in accordance with the arbitration provisions of the Division A CBA. The Hotel demands the extricating drastic remedy of injunctive relief while reeking of unclean hands and would upend decades-old public policy favoring arbitration, not the courts, in resolving just such labor disputes as the Hotel wrongly brings here. Under all these circumstances, the Hotel should pay for its bad faith vexatious conduct by an award of attorney's fees to the Union.

## CONCLUSION

For the reasons set forth above, the Court should deny the Hotel's motion for a TRO and preliminary injunction to stay arbitrations demanded by the Union and dismiss the Hotel's petition to stay the same in its entirely. Further, the Court should exercise its discretion and award the Union its attorneys' fees in light of Hotel's counsel's bad faith in bringing an action to stay arbitration where based upon undisputed facts and well settled law, the dispute submitted to

{00674835-1}

arbitration was undeniably arbitrable, as well as such other relief to the Union that this Court deems

fair and appropriate.

Dated:  New York, New York
        June 29, 2020

                                    PITTA LLP
                                    *Attorneys for Respondent Union*

                                    By: _____
                                        Joseph Farelli
                                        (jfarelli@pittalaw.com)
                                        120 Broadway, 28th Floor
                                        New York, New York 10271
                                        (212) 652-3890 (phone)
                                        (212) 652-3891 (fax)

{00674835-1}