UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
BANCROFT OWNERS INC.,

                               **Petitioner,**                      **Case No.: 20-cv-4914 (AKH)**

    -against-

**NEW YORK HOTEL AND MOTEL TRADES**         **REPLY AFFIRMATION OF**
**COUNCIL, AFL-CIO,**                                        **JOSEPH M. LABUDA, ESQ.**

                               **Respondent.**
------------------------------------------------------------------X

I, Joseph M. Labuda, Esq., state under penalty of perjury that:

1. I am a Partner at the law firm Milman Labuda Law Group PLLC, and I am counsel for Petitioner Bancroft Owners Inc. ("The Bancroft" or "Petitioner") in the above-captioned matter. As such, I have personal knowledge of the facts contained in this Affirmation.

2. This Reply Affirmation is submitted in further support of The Bancroft's application, by way of order to show cause, to stay two arbitrations scheduled for June 29, 2020 and June 1, 2020 by Respondent, New York Hotel and Motel Trades Council, AFL-CIO ("Union") and for a preliminary injunction to enjoin the arbitrations from proceeding.

3. The Union's opposition papers provide no basis to deny The Bancroft's application to stay the arbitrations for several reasons. Even though the Union claims that Bancroft engaged in certain activity, this alone cannot bind The Bancroft to an unsigned collective bargaining agreement ("CBA").

**There Is No Signed Union Contract**

4. In its opposition, the Union again failed to produce any CBA signed by The Bancroft. In fact, there is no evidence that The Bancroft ever even received a copy of any Union CBA (signed or unsigned).

1

5.    Indeed, the only CBA produced by the Union has a signature line for the employer specifically (as opposed to any multi-employer association), but the CBA is unsigned. Bokerman Aff. Ex. A, p.48.

6.    In addition, it seems incredulous that the purported CBA, which the Union claims was between the Union and the multi-employer association, has a signature line for the employer instead of the association. Bokerman Aff. ¶ 2; Ex. A, p.48. It is clear that this CBA was intended to be signed by an employer to show that it agreed to be bound. The fact that there is a signature line but no signature clearly demonstrates that The Bancroft (which is not even a hotel) did not agree to any CBA.

7.    Since the Union failed to produce a signed CBA, this is a very strong indication that Petitioner is not bound to any CBA with the Union. See Tile Setters & Tile Finishers Union, Local Union No. 7 v. Speedwell Design/BFK Enter., LLC, No. 06-cv-5211 (KAM), 2009 U.S. Dist. LEXIS 27270, at *29-30 (E.D.N.Y. Mar. 31, 2009).

**There Is No Agency Relationship**

8.    The Union failed to provide evidence that Robert Saltzstein ("Saltzstein") had authority to act on behalf of The Bancroft.

9.    In its opposition, the Union attached a 2007 email from Saltzstein indicating that he has a bargaining assent from The Bancroft. Bokerman Aff. Ex. C. This alone is insufficient to establish an agency relationship for multiple reasons.

10.   First, the Union's reliance on Saltzstein's own representations cannot be used to establish apparent authority on behalf of The Bancroft. Fennell v. TLB Kent Co., 865 F.2d 498, 502 (2d Cir. 1989).

11. Second, the Union failed to attach copies of the purported assent, whether signed or unsigned, and The Bancroft does not have a copy of this purported assent. As such, there were no representations made by The Bancroft directly to the Union, which is necessary for apparent authority to be conferred. Id.

12. Finally, even if the purported assent exists, it could not bind The Bancroft until 2020 or 2027 as the Union suggests. At best, the purported assent would only bind The Bancroft from 2007 to 2013.

13. It should be noted that The Bancroft currently operates a cooperative building and no longer operates as a hotel. Since The Bancroft is a co-op now, it no longer requires a contract with a hotel union.

**There Was No Assumption of a Union Contract**

14. The Union also argues that The Bancroft is bound to the Union CBA under the doctrine of assumption. This is not the case on the following grounds.

15. First, The Bancroft has a right to pay competitive wages and provide benefit packages, which is lock step with union rates, in order to retain its employees.

16. Second, it is undisputed that the Union is the exclusive representative of the employees at The Bancroft. Thus, under the National Labor Relations Act ("NLRA"), The Bancroft has a duty to discuss and attempt to resolve any workplace issues with the Union in good faith (such as wages or discharges), with or without a CBA in place. See Electromotion, Inc., 309 N.L.R.B. 990, 1002 (Dec. 16, 1992) (noting that "a 'labor organization' purports to be, first and foremost, an agent or advocate for employees, and should be a loyal and exclusive agent"); 29 U.S.C. § 158(a)(5) (noting that employer has duty to "bargain collectively with the representatives of his employees" in good faith).

17. Third, as stated above, there is no signed agreement to arbitrate between The Bancroft and the Union. It is settled that The Bancroft can pay certain Union wages and benefits and still not be bound to a CBA. AGL Indus. v. Iron Workers Local 40, No. 14-CV-03618 (FB) (RLM), 2014 U.S. Dist. LEXIS 176833, at *3-4 (E.D.N.Y. Dec. 22, 2014); Panek v. Cimato Bros. Constr., Inc., No. 02-CV-333, 2007 U.S. Dist. LEXIS 76359, at *11-12 (W.D.N.Y. Oct. 15, 2007).

18. Fourth, The Bancroft never indicated (by their conduct or otherwise) that they agreed to arbitrate any disputes. The Union's claim that The Bancroft participated in an arbitration is patently untrue. See Bokerman Aff. ¶ 10; Ex. F. As the settlement agreement shows, this matter was resolved before any arbitration commenced. Accordingly, The Bancroft did not participate in this arbitration. In fact, The Bancroft does not recall participating in any arbitration with the Union (and certainly no arbitrations in the 2013-2020 period the Union claims that that The Bancroft is bound to a CBA).

19. Finally, even if there was a signed CBA in place that later expired, The Bancroft was required by law to keep the existing terms and conditions of employment in place. Under the NLRA, an employer cannot make unilateral changes in working conditions without first bargaining with the union to impasse. NLRB v. Katz, 369 U.S. 736, 743 (1962) (holding that "an employer's unilateral change in conditions of employment under negotiation is similarly a violation of § 8 (a)(5)" of NLRA). Thus, an employer is obligated to maintain the status quo until a new CBA is signed or the parties reach impasse. Here, The Bancroft did not sign a new CBA or agree to arbitrate, and its required compliance with the NLRA cannot constitute an assumption or be used to bind it to an arbitration provision in an unsigned CBA.

Dated: Lake Success, New York
      June 29, 2020

                                      /s/ Joseph M. Labuda, Esq.
                                      Joseph M. Labuda, Esq.