UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

— — — — — — — — — — — — — — — — — — — — — — — — — — — X

BANCROFT OWNERS INC.,                                      :
                                                           :    Case 1:20-cv-04914 (AKH)
                              Petitioner,                  :
                                                           :
          – against –                                      :
                                                           :
NEW YORK HOTEL AND MOTEL TRADES                            :
COUNCIL, AFL-CIO,                                          :
                                                           :
                              Respondent.                  :

— — — — — — — — — — — — — — — — — — — — — — — — — — — X


**MEMORANDUM OF LAW IN OPPOSITION TO
SECOND MOTION OF PETITIONER BANCROFT
OWNERS INC. FOR A STAY OF SAME ARBITRATION**


PITTA LLP
Barry N. Saltzman
(bsaltzman@pittalaw.com)
Andrew D. Midgen
(amidgen@pittalaw.com)
120 Broadway, 28th Floor
New York, NY  10271
Telephone:  212-652-3890
Facsimile:  212-652-3891

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

**<u>FACTS</u>** ............................................................................................................1

**<u>PROCEDURE</u>** ...............................................................................................5

**<u>ARGUMENT</u>** ................................................................................................6

     I.     THE COURT SHOULD DENY BANCROFT'S REPEAT MOTION ..............6

          A.   The Court Has Already Denied This Motion Before ..................6

          B.   A Motion to Reconsider Comes Too Late and Cites No Error
          By the Court ................................................................................7

     II.    UNDER FEDERAL LABOR LAW, THE ARBITRATOR DECIDES
     WHETHER THE DIVISION A CBA CONTINUES TO APPLY TO BANCROFT ....8

     III.   THE MOTION IS STILL WRONG ................................................12

     IV.   BANCROFT SHOULD PAY THE UNION'S ATTORNEYS FEES ............16

**<u>CONCLUSION</u>** .............................................................................................18

i

{00678239-7}

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abram Landau Real Estate v. Bevona*,
  123 F.3d 69 (2d Cir. 1997)...........................................................................9, 10, 12

*Alphonse Hotel Corp. v. New York Hotel & Motel Trades Council, AFL-CIO*,
  No. 03 CIV. 1992 (DC), 2004 WL 414836 (S.D.N.Y. Mar. 5, 2004) ......................................11

*Bell v. Cendant Corp.*,
  293 F.3d 563 (2d Cir. 2002)...........................................................................8

*Bevona v. Deer Head Chemical Industries, Inc.*,
  No. 90 Civ. 3973(RJW), 1991 WL 146327 (S.D.N.Y. July 19, 1991)...................................15

*Brown v. C. Volante Corp.*,
  194 F.3d 351 (2d Cir. 1999)...........................................................................12

*Chartier v. Parkoff*,
  No. 96 CIV. 0541 RWS, 1997 WL 599390 (S.D.N.Y. Sept. 26, 1997) .................................15

*Citi Connect, LLC v. Local Union No. 3, Int'l Bhd. of Elec. Workers, AFL-CIO*,
  No. 20 CIV. 5147 (CM), 2020 WL 5940143 (S.D.N.Y. Oct. 7, 2020) ...........................passim

*Coca-Cola Bottling Co. of N.Y. v. Soft Drink & Brewery Workers Union Local 812*,
  242 F.3d 52 (2d Cir. 2001)............................................................................5

*Flannery Parking Sys., Inc. v. Local 917, Int'l Bhd. of Teamster, Chauffeurs, Warehousemen,
  Helpers of Am.*, AFL-CIO,
  No. 95 CIV. 9522 (MBM), 1996 WL 403041 (S.D.N.Y. July 18, 1996)................................10

*Globe Seaways, Inc. v. Nat'l Marine Engineers' Beneficial Ass'n*,
  451 F.2d 1159 (2d Cir. 1971)..........................................................................10

*In Matter of Arbitration Between P.M.I. Trading Ltd. v. Farstad Oil, Inc.*,
  No. 00 CIV. 7120 (RLC), 2001 WL 38282 (S.D.N.Y. Jan. 16, 2001) .................................16

*Johnson v. Nat'l Football League Players Ass'n*,
  No. 17 CIV. 5131 (RJS), 2018 WL 8188558 (S.D.N.Y. Oct. 3, 2018) .................................5

*Litton Fin. Printing Div. v. N.L.R.B*,
  501 U.S. 190 (1991)...................................................................................15

{00678239-7}

*Local Union No. 1 v. P.A.C. Heating, Inc.*,
 No. 16-CV-547 (NG) (RML), 2017 WL 1133346 (E.D.N.Y. Mar. 24, 2017) ........................ 10

*Local Union No. 38, Sheet Metal Workers' Int'l Ass'n, AFL-CIO v. Custom Air Sys., Inc.*,
 357 F.3d 266 (2d Cir. 2004)................................................................................................ 12

*Matter of First Winthrop Properties, Inc. (Carney)*,
 177 A.D.2d 282, 575 N.Y.S.2d 861 (1st Dep't 1991) ............................................................ 10

*Mount Ararat Cemetery v. Cemetery Workers & Greens Attendants Union, Local 365*,
 975 F. Supp. 445 (E.D.N.Y. 1997) ...................................................................................... 10

*New York Hotel & Motel Trades Council v. CF 43 Hotel, LLC*,
 No. 16 CIV. 5997 (RMB), 2017 WL 2984168 (S.D.N.Y. June 14, 2017) .............................. 16

*New York Hotel & Motel Trades Council, AFL-CIO v. Hotel Nikko of New York, Inc.*,
 No. 91 CIV. 0755 (DNE), 1991 WL 168284 (S.D.N.Y. Aug. 22, 1991) .................................. 9

*Oriental Realty Corp. v. Local 144, Associated Hotel, Hosp., Nursing Home & Allied Servs.
 Union, SEIU, AFL-CIO*,
 523 F. Supp. 441 (E.D.N.Y. 1981) ...................................................................................... 10

*Ottley v. Sheepshead Nursing Home*,
 688 F.2d 883 (2d Cir. 1982)................................................................................................. 9

*PaineWebber v. Bybyk*,
 81 F.3d 1193 (2d Cir. 1996).................................................................................................. 8

*Peltz v. SHB Commodities, Inc.*,
 115 F.3d 1082 (2d Cir. 1997)............................................................................................... 13

*Pitta v. Hotel Ass'n of N.Y. City, Inc.*,
 806 F.2d 419 (2d Cir. 1986)................................................................................................ 11

*Rd. Sprinkler Fitters Local Union No. 669, AFL-CIO v. Simplex Grinnell LP*,
 251 F. Supp. 2d 1201 (W.D.N.Y. 2003) ............................................................................... 15

*Retail Assocs., Inc.*,
 120 NLRB 388 (1958) ................................................................................................. 14, 15

*Rochdale Vill., Inc. v. Pub. Serv. Emp. Union, Local No. 80*,
 605 F.2d 1290 (2d Cir. 1979)................................................................................................ 9

*Rochester Laborers' Welfare-S.U.B. Fund by Brown v. Flower City Monitors, Inc.*,
 No. 6:15-CV-06446(MAT), 2017 WL 3033787 (W.D.N.Y. July 18, 2017)............................ 15

*Saudi Iron & Steel Co. v. Stemcor USA, Inc.*,
 No. 97 CIV. 5976 (DLC), 1997 WL 790746 (S.D.N.Y. Dec. 23, 1997).................................. 17

iii

*Seabury Const. Corp. v. Dist. Council of New York & Vicinity of United Bhd. of Carpenters & Joiners of Am.*,
    461 F. Supp. 2d 193 (S.D.N.Y. 2006).................................................................. 10, 13

*Shaw Grp. Inc. v. Triplefine Int'l Corp.*,
    322 F.3d 115 (2d Cir. 2003)........................................................................................ 8

*St. Barnabas Hosp. v. 1199SEIU, United Healthcare Workers E.*,
    No. 16-CV-4117 (VEC), 2016 WL 4146143 (S.D.N.Y. Aug. 2, 2016) .................... 5

*Steelmasters, Inc. v. Local Union 580 of Int'l Ass'n of Bridge, Structural Ornamental & Reinforcing Iron Workers*, AFL-CIO,
    No. 05-CV-259 (MDG), 2008 WL 312096 (E.D.N.Y. Feb. 1, 2008) ..................... 10

*The Tile Setters & Tile Finishers Union of New York & New Jersey v. Speedwell Design/BFK Enter., LLC*,
    No. 06-CV-5211(KAM), 2009 WL 922021 (E.D.N.Y. Mar. 31, 2009).................... 9

*Thomson-CSF, S.A. v. Am. Arbitration Ass'n*,
    64 F.3d 773 (2d Cir. 1995)....................................................................................... 12

*Trustees of the New York City Dist. Council of Carpenters Pension Fund v. Formula 1 Builders, LLC*,
    No. 1:17-CV-1234-GHW, 2017 WL 1483369 (S.D.N.Y. Apr. 25, 2017) .............. 16

*Trustees of UIU Health & Welfare Fund v. N.Y. Flame Proofing Co., Inc.*,
    828 F.2d 79 (2d Cir. 1987).................................................................................. 12, 15

*Washington Hosp. Ctr. v. Serv. Employees Int'l Union Local 722, AFL-CIO*,
    746 F.2d 1503 (D.C. Cir. 1984)............................................................................... 16

*Williamsbridge Manor Nursing Home v. Local 144 Div. of 1199, Nat. Health & Human Servs. Employers Union, AFL-CIO*,
    107 F. Supp. 2d 222 (S.D.N.Y. 2000)...................................................................... 10

*Workers v. Niagara Mohawk Power Corp.*,
    196 F.3d 117 (2d Cir. 1999)..................................................................................... 16

## **Rules**

Fed. R. Civ. P. 56(a) .............................................................................................................. 5

Local Civil Rule 6.3 ............................................................................................................... 7

Local Civil Rule 56.1 ............................................................................................................. 5

Respondent New York Hotel and Motel Trades Council, AFL-CIO ("Union') submits this Memorandum of Law and accompanying affirmations of Amy Bokerman and Barry N. Saltzman (with exhibits) in opposition to the repeat motion of Petitioner Bancroft Owners Inc. ("Employer," "Petitioner" or "Bancroft") to stay an arbitration that has already commenced, in which Bancroft has participated, and which this Court previously declined to stay only a few months ago. Bancroft's motion should again be denied because it was previously rejected by Summary Order (Doc. 15) and at hearing on June 30, 2020;[1] because a motion for reconsideration fails as both baseless and untimely; and because, as on June 30, Petitioner offers no basis in fact, law or procedure for summary judgment in this motion to stay labor arbitration.  Indeed, each of the issues and arguments raised by Bancroft in its motion must be raised in the first instance to the arbitrator. As discussed below, Petitioner's motion should be denied and the Union granted such further relief as this Court deems fair and appropriate.

## FACTS

To conserve resources and mitigate the unnecessary repeat burden on the Court recreated by Petitioner, the Union refers to the voluminous record established in opposition to Petitioner's prior unsuccessful order to show cause ("OSC"), incorporated herein by reference.  Doc. 9, 11-13. For convenience of the Court, the Union briefly summarizes the facts, updating as necessary.

Since 2007, the Employer has bargained three (3) successive Division A collective bargaining agreements with the Union ("Division A CBA") always using as its bargaining agent an employer association known as the Associated Hotels and Motels of Greater New York ("Associated Hotels"), which exists solely for the purpose of negotiating the Division A CBAs. Farelli OSC Aff. ¶¶ 8-17, Doc. 11.   The Employer executed an express "Assent" for such

---

[1] A copy of the transcript of the June 30, 2020, remote telephone conference ("Tr.") is attached as Exhibit A to the Affirmation of Barry N. Saltzman ("Saltzman Aff.")

bargaining in 2007, continuing by its terms for every successor contract, extension or modification. Farelli OSC Aff. ¶ 9, Ex. B, Doc 11.  In reliance on the Assent and the Employer never withdrawing its authorization, the Union and Associated Hotels negotiated the 2007, 2013 and 2015 Division A CBAs, each between the Union, "New York Hotel and Motel Trades Council, AFL-CIO" and participating employers such as Bancroft.  Farelli OSC Aff. ¶¶ 8-17, Exs. A-G, Doc. 11.

Petitioner's motion does not contest entry and compliance with the 2007 and 2013 Division A CBAs through June 30, 2020.  Both the 2007 and the 2013 Division A CBAs identify the bargaining union as "New York Hotel and Motel Trades Council, AFL-CIO," the Union in this action.  Farelli OSC Aff. Ex. C, Doc. 11-3, at 5; Farelli OSC Aff. Ex. E, Doc. 11-5, at 2; Farelli OSC Aff. Ex. G, Doc. 11-7, at 2.

In 2015, Associated Hotels and the Union again engaged in multi-employer bargaining for an agreement to modify and extend the 2013 Division A CBA through June 30, 2027.  Farelli OSC Aff. ¶ 15, Doc. 11.  Prior to bargaining, Associated Hotels' counsel Saltzstein provided the Union with a list of employers that Associated Hotels would represent in multi-employer bargaining with the Union, including Bancroft.  *Id*. at ¶ 16, Ex. F.  Saltzstein also noted in his communication with the Union that no Associated Hotels employer member had sent a notice of withdrawal from multi-employer bargaining.  *Id*. at ¶ 16, Ex. F.  The Union had also not received any notice from Bancroft that it was withdrawing from the Associated Hotels or from multi-employer bargaining.  *Id*. at ¶ 16.  The 2015 negotiations between the Associated Hotels and the Union resulted in a Memorandum of Agreement which modified and extended the 2013 Division A CBA through June 30, 2027 ("2015 CBA").  *Id*. at ¶ 17, Ex. G.  The 2015 CBA notably modified the terms of the then 2013 CBA, *inter alia*, by reallocating one-half of the monthly employer contributions payable to the Legal Fund to the Health Benefits Fund and significantly increasing the employer contribution

rates to the Health Benefits Fund, effective January 1, 2015.  *Id*. at ¶ 17, Ex. G.  The Employer implemented the terms of the 2015 agreement.  *Id*. at ¶ 18.

Since 2015, Bancroft has implemented the terms of the modified and extended Division A CBA, with the Union as party, while reaping the benefits of slowed wage step-ups, comprehensive healthcare for its workers and stable labor peace.  *See* Tr. at 21.  Bancroft filed remittance reports and made contribution payments to the Hotel Trades Council Employee Benefit Fund in accordance with the 2015 CBA, including the rates and re-allocations negotiated in 2015. Bokerman OSC Aff. ¶¶ 6-9, Doc. 9; Veras OSC Aff. ¶¶ 3-5, Doc. 12.  At all times, including 2015 to 2020, Bancroft honored and remitted to the Union employee check-offs for dues, as required under the 2013 CBA modified and extended by the 2015 CBA.  Bokerman OSC Aff. ¶¶ 6-9, 12, 13, Exs. H-K, Doc. 9; Farelli OSC Aff. ¶¶ 12, 14, 17, Doc. 11; Veras OSC Aff. ¶¶ 3-5, Doc. 12.

Despite the above documented CBAs, bargaining history and decade-long compliance for mutual benefit, current Employer counsel began to question Petitioner's obligations beyond June 30, 2020.  Accordingly, the Union filed for arbitration of this question on June 23, 2020 (the "Contract Arbitration") under the broadest possible arbitration provisions of the 2013 and 2015 CBAs, before the Office of the Impartial Chairperson ("OIC").  Farelli OSC Aff. ¶ 26, Ex. M, Doc. 11.  The OIC scheduled an emergency hearing for June 29, 2020.  *Id*. at ¶ 26, Ex. N.

By Order to Show Cause filed by Petitioner and signed by this Court with temporary restraining order ("TRO") on Friday, June 26, 2020, Petitioner moved to stay the Contract Arbitration on the grounds that the Employer had never agreed to arbitrate.[2]  At hearing on June

---

[2] The OSC concerned two arbitrations – the Contract Arbitration and a disciplinary grievance.  Both had been stayed by the TRO and the Court vacated the stay as to both.  Tr. 17-18.  Bancroft agrees to honor the disciplinary grievance (Bancroft Brief, Doc. 21-1, at 2 n.1); it must honor both.

3

30, 2020, following full argument by Bancroft and Union counsel, this Court dissolved its TRO and committed the parties to OIC arbitration.  This Court held:

> Petitioner gave express consent to non-party Associated Hotels . . . to negotiate and bind Petitioner to a CBA and any extensions or successor agreements, and Petitioner has not provided any evidence that consent was ever revoked . . . Furthermore, Petitioner has complied with the terms of the CBA for years, including by paying wages according to the schedules set forth in the CBA, making benefit fund contributions and submitting remittance reports. . . .

Doc. 15 at 1-2.  Amplifying its reasons at argument, the Court closely questioned Petitioner's counsel concerning both the Assent and CBA benefit fund compliance, and dissolved the TRO thereby allowing the Contract Arbitration to proceed.  Indeed, swatting aside Bancroft counsel's repeated requests for impermissible judicial interference, the Court noted that Petitioner could always return after arbitration to vacate an award, Tr. at 12, and directed Petitioner to, "Ask the arbitrator."  Tr. at 22

Bancroft did, for a short time, but is now hedging its bets.  In response to the Union's demand dated July 13, 2020 to continue the Contract Arbitration, which identifies the arbitration under the very same case number as under the June notice – "HTC #20-198," Bancroft appeared at the August 21, 2020 OIC hearing and "presented its case to the arbitrator."  Bancroft Brief, Doc. 21-1, at 2 n.1; Labuda Decl. Ex. 4, Doc. 21-6.  However, Bancroft also notified the Union of its purported revocation of the Assent on June 30, 2020, five (5) years after the 2015 CBA effective date, even longer after negotiations binding the Employer had long concluded.  Labuda Decl. Ex. 2, Doc. 21-4.  Having taken the temperature of its case at the August 21, 2020 OIC hearing, and refusing to honor the arbitrator's fee, Petitioner moves yet again to stay the Contract Arbitration on the same ground - that it never agreed to the 2015 Division A CBA.  *See* Bokerman Aff. ¶ 3.

**PROCEDURE**

Local Rule 56. 1 requires that any motion for summary judgment must be accompanied by a Rule 56 statement of undisputed material facts. "Failure to submit a statement may constitute grounds for denial of the motion." *Ibid.* Petitioner filed no such requisite statement. Accordingly, the motion may be denied on this material defect alone.

Petitioner also moves under inapposite law. In this Circuit, actions concerning collective bargaining agreements arise under Section 301 of the Labor Management Relations Act ("LMRA"), not the Federal Arbitration Act ("FAA") nor the New York State CPLR. *Cf.* Bancroft Brief, Doc. 21-1, at 2. The difference is significant. While federal courts may look to the FAA for analogy, they must and do follow federal labor policy promoting arbitration as binding. *Coca-Cola Bottling Co. of N.Y. v. Soft Drink & Brewery Workers Union Local 812*, 242 F.3d 52, 54-55 (2d Cir. 2001) (recognizing that the LMRA creates "a body of federal law analytically distinct from the FAA" and that application of the FAA to labor cases "may lead to anomalous or even bizarre results."); *Johnson v. Nat'l Football League Players Ass'n*, No. 17 CIV. 5131 (RJS), 2018 WL 8188558, at *15 (S.D.N.Y. Oct. 3, 2018) (rejecting FAA, "Since under the FAA arbitration is the substitute for litigation, while under the LMRA "it is the substitute for industrial strife."), *aff'd*, 820 F. App'x 51 (2d Cir. 2020); *St. Barnabas Hosp. v. 1199SEIU, United Healthcare Workers E.*, No. 16-CV-4117 (VEC), 2016 WL 4146143, at *2 (S.D.N.Y. Aug. 2, 2016) (same).

Finally, Petitioner concedes the heavy burden weighing decidedly against its motion. The motion must be denied unless Petitioner shows "that there is no genuine dispute as to any material fact" and is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Citi Connect, LLC v. Local Union No. 3, Int'l Bhd. of Elec. Workers, AFL-CIO*, No. 20 CIV. 5147 (CM), 2020 WL 5940143, at *3 (S.D.N.Y. Oct. 7, 2020). As shown below and previously decided by the Court,

5

Petitioner is not entitled to a stay as a matter of law, and Petitioner's factual arguments merely

claim disputes as to material facts.  As Chief Judge McMahon pointedly explained in *Citi Connect*,

denying summary judgment to stay arbitration under an allegedly expired contract, "the result

would be the same if this were decided as a motion for an injunction because ... [plaintiff] does not

demonstrate a likelihood of success on the merits."  *Ibid.*

## ARGUMENT

## I.
## THE COURT SHOULD DENY BANCROFT'S REPEAT MOTION

### A.  The Court Has Already Denied This Motion Before

The Court already denied Petitioner's motion when brought just a few months ago by order

to show cause on the same issues and evidence.  Petitioner should not be permitted a second bite.

The issues are the same.  Both the demands from the OSC motion and the current motion

raise the issue challenging Bancroft's claim that it is not bound to the 2015 Division A CBA.

*Compare* Farelli OSC Aff. Ex. M, Doc. 11-13 *with* Labuda Decl. Ex. 3, Doc. 21-5.  Indeed, the

same case number "HTC #U20-198" marks both demands, attesting to the continuation of the very

grievance which the Court permitted to proceed on June 30, 2020, on the record and by final

summary order.  *Ibid.*  On both motions, Bancroft argues that it never signed or otherwise agreed

to the 2015 CBA.  Labuda OSC Decl. ¶¶ 12-17, Doc. 3-1; Bancroft OSC Brief, Doc. 3-7, at 4;

Bancroft Brief, Doc. 21-1, at 3-4.  On the evidence presented, this Court decided on June 30 that

Petitioner must arbitrate the issue, and that ruling should stand.

In addition to the identical issues, evidence on the issues overlaps.  Both motions introduce

the same CBAs.  *Compare* Farelli OSC Aff. Exs. E, G, Doc. 11 *with* Labuda Decl. Exs. 6, 7, Doc.

21.  Both motions present the long bargaining history and consistent compliance by Bancroft with

the Division A CBAs, *compare* Farelli OSC Aff. ¶¶ 12-18, Doc. 11 *with* Bancroft Brief, Doc. 21-

{00678239-7}

1, at 8-9, as well as Bancroft's failed argument that such long term compliance signifies nothing. *Compare* Bancroft OSC Brief, Doc. 3-7, at 9 *with* Bancroft Brief, Doc. 21-1, at 8-9.  In particular, both motions implicate the Employer's Assent, Farelli OSC Aff. Ex. B, Doc. 11-2; Labuda Decl. Ex. 5, Doc. 21-7, evidence that this Court properly deemed determinative in its ruling that Bancroft could not stay arbitration.  Doc. 15.

Bancroft disingenuously treats the July 13 demand as a new arbitration not addressed by this Court, but that exalts false form over substance.  As shown by subject matter and case number, the July 13 demand continues the grievance started by the June 23, 2020 demand, temporarily stayed and then lifted, on June 30, 2020, allowing the Contract Arbitration to go forward.  That two demands necessarily issued, due to the improper delay caused by Petitioner's OSC, is a fact without distinction and does not alter the subject reality that the Court allowed the Contract Arbitration, again challenged here by Petitioner, to continue.  Federal courts do not grant do-overs.

### B.  A Motion to Reconsider Comes Too Late and Cites No Error By the Court

Local Civil Rule 6.3 permits a motion for reconsideration or reargument, "within fourteen (14) days after the entry of the Court's determination of the original motion," and only upon "matters or controlling decisions which counsel believes *the Court* has overlooked." (emphasis added).

The Court's order on the original motion was entered June 30, 2020.  Doc. 15.  The current repeat motion comes almost four (4) months later, October 22, 2020.  Doc. 21.  Bancroft's motion for the Court to reconsider its June 30 order that the Contract Arbitration may proceed thus comes more than ninety (90) days too late and should be rejected.

Nor does Petitioner identify any matter or controlling decisions which this Court overlooked, because none exists.  Bancroft tries two, neither well founded.  First, Petitioner relies

{00678239-7}

on the fact that the Assent names "Local 6" while the arbitration names "Hotel Trades Council." However, the Court did not "overlook" the Assent, Farelli OSC Aff. Ex. B, Doc. 11-2, now revived in Labuda Decl. Ex. 5, Doc. 21-7; counsel did, Tr. at 5-6.  On the contrary this Court closely questioned Bancroft counsel about the Assent, which counsel did not rebut nor distinguish.  Tr. 3-9.[3]  Accordingly, since no temporal nor substantive ground exists for reconsideration of the Order, Petitioner's repeat motion should be denied.

## II.

### UNDER FEDERAL LABOR LAW, THE ARBITRATOR DECIDES WHETHER THE DIVISION A CBA CONTINUES TO APPLY TO BANCROFT

Bancroft incorrectly assumes that this Court should decide whether it remains bound to the 2013-2027 collective bargaining agreement.   Bancroft's assumption is wrong.

This Circuit has repeatedly enforced the parties' ability to provide for the arbitrator to decide the issue of arbitrability itself.  *Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 124-25 (2d Cir. 2003) (agreement manifested parties' clear and unmistakable intent to submit questions of arbitrability to the arbitrator so "the district court should have deferred to the arbitrator on the parties' dispute about the arbitrability of that claim"); *Bell v. Cendant Corp.,* 293 F.3d 563, 568-70 (2d Cir. 2002) (affirming district court granting of motion to compel arbitration of arbitrability, including claim of waiver); *PaineWebber v. Bybyk*, 81 F.3d 1193, 1197, 1199 (2d Cir. 1996) (the parties' agreement providing "any and all controversies . . . concerning any . . . dispute or the construction, preference, or breach of this or any other agreement . . . shall be determined by

---

[3] The claimed distinction is also wrong. *See infra* at 13-14; *see also* Bokerman OSC Aff. ¶ 4, Doc. 9; Bokerman Aff. ¶ 2, submitted herewith, and the parties long relationship under "Hotel Trades Council" encompassing three Division A CBAs naming the Union and virtually every document pertaining to the CBAs.  Farelli OSC Aff. Exs. C, E, G, Doc. 11; Bokerman OSC Aff. Exs. A, B, Doc. 9; Labuda Decl. Exs. 6, 7, Doc. 21.  Everybody, including Bancroft and its counsel, knew and accepted one authorized bargaining representative – "New York Hotel and Motel Trades Council, AFL-CIO."

arbitration . . . ."; action to stay arbitration dismissed by endorsed order by Judge Duffy, and affirmed by the Court of Appeals); *Citi Connect*, 2020 WL 5940143, at *5 (arguments like Bancroft's', "fail to address the fact that the parties agreed to a broad arbitration clause ..."); *New York Hotel & Motel Trades Council, AFL-CIO v. Hotel Nikko of New York, Inc*., No. 91 CIV. 0755 (DNE), 1991 WL 168284, at *5 (S.D.N.Y. Aug. 22, 1991).

The Court of Appeals identified two distinct arbitrability "factual scenarios" that occasion review of whether an arbitration agreement governs - those involving: "(1) whether the parties *ever* entered into an arbitration agreement at all, and (2) whether an arbitration agreement has expired or been terminated." *Abram Landau Real Estate v. Bevona*, 123 F.3d 69, 72 (2d Cir. 1997) (emphasis added).  "When parties disagree about whether they *ever* entered into an arbitration agreement, a court decides that issue, absent a clear and unmistakable delegation of that authority to an arbitrator." *Ibid*. (emphasis added); *see also The Tile Setters & Tile Finishers Union of New York & New Jersey v. Speedwell Design/BFK Enter., LLC*, No. 06-CV-5211(KAM), 2009 WL 922021, at *10 (E.D.N.Y. Mar. 31, 2009) (employer was never a member of the multi-employer bargaining association that negotiated the arbitration clause the union sought to enforce).

Questions about whether an arbitration agreement that did exist has terminated, as here, are submitted to arbitration when the arbitration clause is broad, as here.  *Abram Landau*, 123 F.3d at 72 (citing *Rochdale Vill., Inc. v. Pub. Serv. Emp. Union, Local No. 80*, 605 F.2d 1290 (2d Cir. 1979)); *see also Ottley v. Sheepshead Nursing Home*, 688 F.2d 883, 886 (2d Cir. 1982) (a claim that a contract with a broad arbitration clause has been terminated should be arbitrated when there is "at least be a colorable claim under the contract that the contract has not terminated").  The Second Circuit observed that disputes concerning termination "are not really over what an arbitration clause provides" but instead are "over the interpretation of other clauses of the

9

collective bargaining agreement, e.g., termination clauses. . . ." *Abram Landau*, 123 F.3d at 72. A broad arbitration clause, thus, directs such contract interpretation to the province of the arbitrator.  *See ibid*; *see also Citi Connect,* 2020 WL 5940143, at *6 (compelling arbitration of a dispute regarding whether an arbitration clause terminated); *Local Union No. 1 v. P.A.C. Heating, Inc.*, No. 16-CV-547 (NG) (RML), 2017 WL 1133346, at *5 (E.D.N.Y. Mar. 24, 2017) (concluding that there was a colorable claim that the employer remained bound by the relevant contracts and therefore the issue of termination was for the arbitrator to decide); *Steelmasters, Inc. v. Local Union 580 of Int'l Ass'n of Bridge, Structural Ornamental & Reinforcing Iron Workers, AFL-CIO*, No. 05-CV-259 (MDG), 2008 WL 312096, at **5-6 (E.D.N.Y. Feb. 1, 2008) (compelling arbitration to determine whether an employer properly terminated its participation in a multi-employer collective bargaining agreement due to a colorable claim that the contract had not terminated); *Seabury Const. Corp. v. Dist. Council of New York & Vicinity of United Bhd. of Carpenters & Joiners of Am.*, 461 F. Supp. 2d 193, 197 (S.D.N.Y. 2006) (compelling arbitration of dispute concerning whether extension agreement continued to bind employer).[4]

---

[4] Petitioner's cases pose no objection since, unlike here, they address disputes where an arbitration agreement has undisputedly expired. *See Globe Seaways, Inc. v. Nat'l Marine Engineers' Beneficial Ass'n,* 451 F.2d 1159, 1162 (2d Cir. 1971) (arbitration agreement expired and the union had not sought to have the employers bound to a successor agreement at the time of the dispute); *Williamsbridge Manor Nursing Home v. Local 144 Div. of 1199, Nat. Health & Human Servs. Employers Union, AFL-CIO*, 107 F. Supp. 2d 222, 223 (S.D.N.Y. 2000) (arbitration agreement undisputedly expired); *Mount Ararat Cemetery v. Cemetery Workers & Greens Attendants Union, Local 365*, 975 F. Supp. 445, 447 (E.D.N.Y. 1998) (same); *Flannery Parking Sys., Inc. v. Local 917, Int'l Bhd. of Teamster, Chauffeurs, Warehousemen, Helpers of Am., AFL-CIO*, No. 95 CIV. 9522 (MBM), 1996 WL 403041, at *3 (S.D.N.Y. July 18, 1996) (same); *Oriental Realty Corp. v. Local 144, Associated Hotel, Hosp., Nursing Home & Allied Servs. Union, SEIU, AFL-CIO*, 523 F. Supp. 441, 444-47 (E.D.N.Y. 1981) (decision pre-dating *Abram Landau* and *Ottley*, concluding that the arbitration clause expired by its terms and that the union had conceded that the employer's withdrawal from the multi-employer association was effective); *Matter of First Winthrop Properties, Inc. (Carney)*, 177 A.D.2d 282, 283, 575 N.Y.S.2d 861 (1st Dep't 1991) (arbitration agreement undisputedly expired and successor contract expressly excluded non-signatories from coverage).

Bancroft's arbitrability contentions necessitate arbitral review because they create at least a colorable dispute over whether the parties' Division A CBA arbitration agreement terminated. The Union and Bancroft were parties to an agreement containing an arbitration clause.  Doc. 15 at 2; Labuda Decl. Exs. 2, 4-7, Doc. 21.[5]  The Division A arbitration clause is very broad, indeed the broadest possible, and Bancroft does not contend otherwise.[6]  Article VIII of the Division A CBA provides:

> *All complaints, disputes or grievances arising between the parties hereto* involving questions or interpretation or application of any clause of this Agreement, *or any acts, conduct or relations between the parties, directly or indirectly,* which shall not have been adjusted by and between the parties involved shall be referred to a permanent umpire(s) to be known as the Impartial Chairperson, and his/her decision shall be final and binding upon the parties hereto. *Any questions regarding arbitrability, substantive, procedural, or otherwise, or regarding the Impartial Chairperson's jurisdiction or authority, shall be submitted to the Impartial Chairperson in accordance with this Article.*

Doc. 21-9 at 20 (emphasis added).   Article VIII includes arbitration clause language that the Second Circuit has found to be very broad, indeed allowing virtually no exception.  *Pitta v. Hotel Ass'n of N.Y. City, Inc.*, 806 F.2d 419, 422 (2d Cir. 1986); *see also Alphonse Hotel Corp. v. New York Hotel & Motel Trades Council, AFL-CIO*, No. 03 CIV. 1992 (DC), 2004 WL 414836, at *5 (S.D.N.Y. Mar. 5, 2004) (contract arbitration clause encompasses even statutory claims), *aff'd,* 117 F. App'x 803 (2d Cir. 2005).

Because the parties' dispute turns on whether Bancroft remains bound to an arbitration agreement, rather than whether an arbitration agreement ever existed, the dispute must be

---

[5] Bancroft has previously sought to preserve its right to challenge the validity of any collective bargaining agreement between the parties.  But its brief in support of this motion forgoes this argument entirely, noting that it "properly terminated the 2013 CBA on June 30, 2020." Doc. 21-1 at 7.  Nor does Bancroft address this Court's earlier finding that it had not "provided any evidence that consent [for the Associated Hotels to bargain on its behalf] was ever revoked."  Doc. 15 at 1.

arbitrated. *Abram Landau*, 123 F.3d at 72. Indeed, Bancroft's ability or inability to withdraw likely depends on interpretations of the bargaining assent and the duration provisions of the Division A Collective Bargaining Agreements. The parties negotiated for an arbitrator's interpretation of their contract obligations, and this Court should not block the same.

### III.

### <u>THE MOTION IS STILL WRONG</u>

Assuming nevertheless *arguendo* that this Court should decide arbitrability, the Court should again deny Petitioner's motion for a stay for the same reasons, and more. As in the OSC, Petitioner fails to meet the high standards to stay labor arbitration.

The Union's claim for wrongful repudiation and non-payment of July 1, 2020 wage increases under the Division A CBA obviously falls within interpretation and application of the CBA, which Bancroft does not dispute. The facts and law against a stay remain determinative as set forth in the Union's OSC Brief pp. 10-14 and accompanying affidavits, including binding a non-signatory to a collective bargaining agreement. *See, e.g., Local Union No. 38, Sheet Metal Workers' Int'l Ass'n, AFL-CIO v. Custom Air Sys., Inc*., 357 F.3d 266, 268 (2d Cir. 2004). Indeed, this Court so held both on agency and compliance:

> Petitioner is unlikely to succeed on the merits of its petition. Petitioner gave express consent to non-party Associated Hotels and Motels of Greater New York to negotiate and bind Petitioner to a CBA and any extensions or successor agreements, and Petitioner has not provided any evidence that consent was ever revoked. *See Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 777 (2d Cir. 1995) ("Traditional principles of agency law may bind a nonsignatory to an arbitration agreement."); *see also Trustees of UIU Health & Welfare Fund v. N.Y. Flame Proofing Co., Inc*., 828 F.2d 79 (2d Cir. 1987). Furthermore, Petitioner has complied with the terms of CBA for years, including by paying wages according to the schedules set forth in the CBA, making benefit fund contributions, and submitting remittance reports. *See Brown v. C. Volante Corp*., 194 F.3d 351, 354-56 (2d Cir. 1999) (finding

12

employer was bound by unsigned CBAs where there was sufficient evidence that employer manifested intent to adopt CBAs); *Seabury Constr. Corp. v. Dist. Council of N.Y. & Vicinity of the United Bhd. of Carpenters & Joiners of Am., AFL-CIO*, 461 F. Supp. 2d 193, 198 (S.D.N.Y. 2006) ("A CBA does not have to be signed by the employer to be effective. An employer's intent to adopt an agreement may be evidenced by its conduct of complying with some of its terms."). Thus, there are multiple bases on which Petitioner was bound by the CBA and therefore subject to its arbitration provision.

Doc. 15 at 1-2.

Bancroft now wrongly claims a stay on the grounds that, once again, it lacks an agreement to arbitrate – this time because the Assent is allegedly limited to bargaining with Local 6; Bancroft's compliance with both the 2013 and 2015 Division A CBAs signifies nothing; and it "withdrew" from the <u>2015</u> negotiations on June 30, <u>2020</u>. All arguments fail.

Bancroft's arguments against the Assent fail for the reasons previously articulated by the Union. Local 6 transferred its negotiations responsibility to the Union, (Bokerman OSC Aff. ¶ 4, Doc. 9), and Bancroft long complied with the 2007, 2013 and 2015 CBAs, all with "New York Hotel and Motel Trades Council, AFL-CIO" as union party, never challenging the Union. Farelli OSC Aff. Ex. C, Doc. 11-3, at 5; Farelli OSC Aff. Ex. E, Doc. 11-5, at 2; Farelli OSC Aff. OSC Ex. G, Doc. 11-7, at 2. Successive contracts with the Union reaffirm Bancroft's Assent to such bargaining with the Union. Moreover, all hotel worker members of Local 6 are also, by that fact, members of the Union. Bokerman Aff. ¶ 2. Accordingly, consistent with the Hotel's long-term compliance, negotiating with the Union is negotiating with Local 6, just as the Division A CBAs reflect. *Peltz v. SHB Commodities, Inc.*, 115 F.3d 1082, 1088 (2d Cir. 1997) (recognizing that actual authority "is interpreted in the light of all circumstances attending these manifestations, including the customs of business, the subject matter, any formal agreement between the parties,

and the facts of which both parties are aware.").  At most, Petitioner raises a question of what the parties understood by the Assent, a material fact question precluding summary judgment.

Bancroft's argument that its compliance with the Division A CBAs for 13 years from 2007 to 2020 signifies nothing also fails logic, fact and law.  Bancroft's acknowledgement that it complied with both the 2013 and 2015 CBA terms through June 30, 2020 means that it also complied with the 2015 terms – any overlap hardly cancels compliance, and Bancroft never distinguished the two or made any reservation while complying.  Moreover, Bancroft cannot and does not deny that since 2015 it complied with Division A CBA terms found only in the 2015 CBA – (1) allocation of contributions and (2) benefit contribution increases.  *See* Bokerman OSC Aff. ¶¶ 6-9, Doc. 9*; Farelli OSC Aff. ¶¶ 17-18, Doc. 11; *see also* Bancroft Brief, Doc. 21-1, at 8-9 ("most of the terms . . . are the same").  Compliance with sole 2015 CBA terms for five years since 2015 emphatically signifies acceptance of that CBA.  To the extent Bancroft contends it did not intend acceptance, that is a fact question disputed by the Union's evidence, thereby precluding summary judgment.  Finally on this point, Bancroft cannot hide behind the inapposite NLRB obligations to maintain old terms after contract expiration while the parties bargain, since here bargaining concluded in 2015 and Bancroft complied with new terms on benefit contributions and allocation since then, not just maintaining prior ones.  As the Court found in its Order, Bancroft accepted the 2015 CBA by its compliance, obtained advantages thereby, and cannot now disavow its obligation to arbitrate.

Nor can Bancroft withdraw from the 2015 Division A CBA by notice dated June 30, 2020 since negotiations for the 2015 CBA had long ago concluded in 2015.  A party seeking to withdraw from multiemployer bargaining must do so clearly on explicit direct notice before negotiations start, not during, and certainly not five years after conclusion.  *See, generally, Retail Assocs., Inc*.,

14

120 NLRB 388, 395 (1958) (prohibiting employers from withdrawing from multi-employer bargaining associations outside specified periods); *accord Trustees of UIU Health & Welfare Fund v. New York Flame Proofing Co.*, 828 F.2d 79, 83 (2d Cir. 1987); *Bevona v. Deer Head Chemical Industries, Inc.*, No. 90 Civ. 3973(RJW), 1991 WL 146327 (S.D.N.Y. July 19, 1991).   Membership also confers apparent authority on the employer association where an employer subsequently fails to withdraw from multi-employer bargaining prior to negotiations.   *New York Flame Proofing Co.*, 828 F.2d at 84.   Adopting the NLRB's framework for determining whether an employer effectively withdrew from a multi-employer bargaining arrangement, courts refuse to permit withdrawal "except upon adequate written notice given prior to the date set by the contract for modification or to the agreed-upon date to begin the multiemployer negotiations."   *Rd. Sprinkler Fitters Local Union No. 669, AFL-CIO v. Simplex Grinnell LP*, 251 F. Supp. 2d 1201, 1203 (W.D.N.Y. 2003) (quoting *Retail Associates, Inc.*, 120 NLRB at 395); *accord Chartier v. Parkoff*, No. 96 CIV. 0541 RWS, 1997 WL 599390, at *3 (S.D.N.Y. Sept. 26, 1997).   The required written notice must be sent to the union.   *Sprinkler Fitters*, 251 F. Supp. 2d at 1204.   Failure to properly withdraw from a multiemployer association results in the binding of an employer to subsequently negotiated agreements.   *See Rochester Laborers' Welfare-S.U.B. Fund by Brown v. Flower City Monitors, Inc.*, No. 6:15-CV-06446(MAT), 2017 WL 3033787, at *5 (W.D.N.Y. July 18, 2017); Union OSC Brief, Doc. 13, at 13-14.   Thus, Bancroft's claimed withdrawal on June 30, 2020, staged to create a false defense just after OSC argument that day, effected nothing.

Finally, Bancroft's *Litton* argument simply does not apply.   *Litton Fin. Printing Div. v. N.L.R.B.,* bars many but not all grievances brought post-contract expiration, depending on circumstances.   *See* 501 U.S. 190 (1991).   But the 2013 CBA has not expired since it was extended by the 2015 MOA.   *See Citi Connect, LLC*, 2020 WL 5940143, at *6 (concluding that a *Litton*

inquiry was premature where the parties disputed whether a contract had terminated).  Moreover, the Contract Arbitration arose and was brought prior to the date of purported 2013 CBA expiration, June 30, 2020.  The Contract Arbitration challenging Bancroft's belated rejection in June, 2020 of the 2015 CBA, was noticed on June 23, 2020; the July 13 demand merely puts that arbitration back on track after Bancroft's baseless delay.  Accordingly, the Contract Arbitration grievance arises and was brought prior to any purported expiration under the continuing Division A CBA binding Bancroft to arbitration.

## IV.

## BANCROFT SHOULD PAY THE UNION'S ATTORNEYS FEES

While Section 301 does not expressly provide for the recovery of attorneys' fees, courts may award such relief pursuant to their equitable powers when "opposing counsel acts in bad faith, vexatiously, wantonly, or for oppressive reason."  *New York Hotel & Motel Trades Council v. CF 43 Hotel, LLC*, No. 16 CIV. 5997 (RMB), 2017 WL 2984168, at *5 (S.D.N.Y. June 14, 2017); *Trustees of the New York City Dist. Council of Carpenters Pension Fund v. Formula 1 Builders, LLC*, No. 1:17-CV-1234-GHW, 2017 WL 1483369, at *4 (S.D.N.Y. Apr. 25, 2017).  "[A]n award of attorneys' fees . . . further[s] the federal policy in favor of settling labor disputes by arbitration."  *Formula 1*, 2017 WL 1483369 at *5 (citing *Local 97, Int'l Bhd. of Elect. Workers v. Niagara Mohawk Power Corp.*, 196 F.3d 117, 124 (2d Cir. 1999)).  Accordingly, courts find attorneys' fees warranted in cases where employers refuse to accede to the arbitration process.  See *Washington Hosp. Ctr. v. Serv. Employees Int'l Union Local 722, AFL-CIO*, 746 F.2d 1503 (D.C. Cir. 1984) (finding a hospital's refusal to submit certain grievances to arbitration sufficiently frivolous and unreasonable to warrant a fee award); *see also CF 43 Hotel*, 2017 WL 2984168, at *6 (awarding fees for refusal to comply with arbitration award); *In Matter of Arbitration Between*

16

*P.M.I. Trading Ltd. v. Farstad Oil, Inc.*, No. 00 CIV. 7120 (RLC), 2001 WL 38282, at *4 (S.D.N.Y. Jan. 16, 2001) (same); *Saudi Iron & Steel Co. v. Stemcor USA, Inc.*, No. 97 CIV. 5976 (DLC), 1997 WL 790746, at *3 (S.D.N.Y. Dec. 23, 1997) (same).

Here, Petitioner certainly acts in bad faith, vexatiously, wantonly and for oppressive reasons.  Petitioner's legal contentions are not only frivolous and unwarranted as shown in Argument III above, but were already decided by this Court as recounted in Argument I above. Similarly, Bancroft's material factual contentions are completely unsupported by the record, which features a continuing Assent and continuous CBA compliance, as this Court has already found. Petitioner's repeat failures of fact and law alone justify attorneys' fees to the Union.  But there is more.

The Union explicitly warned Petitioner that it would seek such relief should Bancroft repeat its failed motion.  Saltzman Aff. Ex. B.  Bancroft consistently fields tactics to baselessly delay arbitration and multiply unnecessary litigation costs in order to bleed the Union, rather than heed the Court's advice to arbitrate and thereafter move to vacate, if Bancroft loses and grounds exist. And Bancroft's abuse of process cuts unusually deep at this time.  COVID has closed a majority of New York City hotels, leaving their employees bereft, and the Union fighting for severance benefits to feed and house and healthcare coverage to protect against pandemic.  Saltzman Aff. ¶ 5.  The Union's limited resources should not be diverted into frivolous litigation anytime, and especially not now.  To make the Union whole, and discourage copy-cat abuses by other employers, this Court should award the Union its legal fees on this motion.

## <u>CONCLUSION</u>

For the reasons and upon the authority set forth above, and all papers submitted herewith and in this case, Petitioner's motion to stay arbitration should be denied together with such further relief to the Union as this Court deems fair and appropriate.

Dated:  New York, New York
        November 5, 2020

                              Respectfully submitted,

                              PITTA LLP
                              *Attorneys for Respondent Union*


                              By:  _____/s_____
                                   Barry N. Saltzman
                                   (bsaltzman@pittalaw.com)
                                   Andrew D. Midgen
                                   (amidgen@pittalaw.com)
                                   120 Broadway; 28th Floor
                                   New York, NY  10271
                                   Telephone:  212-652-3890
                                   Facsimile:  212-652-3891

18

{00678239-7}